312

**Marie MONTALVO, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 93–553.

United States Court of Veterans Appeals.

Jan. 4, 1995.

Jerry Levine was on the brief, for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Rosalind E. Masciola, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and FARLEY and MANKIN, Judges.

FARLEY, Judge:

The appellant, widow of veteran Ignacio I. Montalvo (veteran), appeals from a Board of Veterans' Appeals (BVA or Board) decision which denied her an earlier effective date for the payment of improved death pension benefits. For the reasons that follow, the Court will vacate the decision and remand the matter to the Board.

I.

The veteran served in the Air Force from February 1950 until September 1953. Record (R.) at 13. He died on April 16, 1977 (R. at 20), and the appellant applied for a death pension in May 1977 (R. at 15–18). She was awarded death pension benefits as the sur-

viving spouse of the veteran, with an effective date of April 1, 1977. R. at 26.

In January 1979, title 38 was amended to "provide improvements in the pension program for certain veterans of a period of war with non-service-connected disabilities, [and] for certain surviving spouses of veterans of a period of war...." Veterans' and Survivors' Pension Improvement Act of 1978, Pub.L. No. 95–588, 92 Stat. 2497 (1978) (the Act). Section 306 of the Act provides that any person eligible for an improved pension as of December 31, 1978,

> may elect to receive [such] pension ..., subject to the terms and conditions in effect with respect to the receipt of such pension. Any such election shall be made in such form and manner as the Administrator [of VA] may prescribe. If pension is paid pursuant to such an election, the election shall be irrevocable.

§ 306(a)(1)(A), 92 Stat. at 2508. Further, subsection (a)(2) provides, "Any person eligible to make an election under paragraph (1) who does not make such an election shall continue to receive pension at the monthly rate being paid to such person on December 31, 1978...."

As required by section 306(a)(1)(a), the Department of Veterans Benefits (DVB) issued instructions which provided that all beneficiaries in receipt of the applicable pensions as of January 1979 were to be "furnished" an election card and an instruction sheet. DVB CIRCULAR 21–79–3, ELECTION PROCEDURES FOR PL 95–588, at 1 (February 22, 1979). These were to be "included with the March 1, 1979, check, or mailed separately on or about March 1, 1979." *Ibid.*

On October 3, 1990, the appellant submitted a letter requesting improved pension benefits, and a VA Form 21–0518–1, "IMPROVED PENSION ELIGIBILITY VERIFICATION REPORT (SURVIVING SPOUSE WITH NO CHILDREN)." R. at 36–37, 57. On October 24, 1990, she was awarded these benefits, effective November 1990. R. at 46. According to a March 18, 1991, Statement of the Case, a Notice of Disagreement was received by VA from the appellant on December 13, 1990. R. at 57. At a September 26, 1991, regional office hearing, the appellant testified that she first

found out about the increased benefits from a friend (R. at 69–70), and that she had never received any information from VA regarding her eligibility for an election of improved benefits (R. at 68–69, 75–76). Additionally, her representative stated, "[The appellant] never received [the election card] and I am aware of that because each check that used to come with any information since it comes in English, [her] daughter and I used to read it and translated [sic] and we never saw anything of that kind...." R. at 74–75.

Later on in the hearing, the following exchange took place between the VA official presiding over the hearing and the appellant's representative, describing how the notification cards were sent out:

> CHAIRPERSON: When the computer produces the check, it produces the [notification] card at the same time. They go inside the same envelope and sent [sic] to the person....
>
> REPRESENTATIVE: That is just a machine that is programmed to throw [out] a check and this card which will then go to an envelope where there is a percentage of some error.
>
> CHAIRPERSON: If the machine does not produce the card and it doesn't come out with the check, there is a person who is working with the project who knows that that person did not receive the card and the card then is sent in some other way.

R. at 84–85. On October 24, 1991, the hearing officer denied the appellant's claim for an earlier effective date, stating that "there is no evidence in file indicating that claimant ever elected the Improved Pension program prior to October 3, 1990. It is a well known fact all VA beneficiaries in payroll status were sent the Improved Pension Program Card with their March 1978 benefit check." R. at 93.

On February 11, 1993, the BVA affirmed the denial of the appellant's claim. The Board concluded that "since the appellant did not submit an election to receive improved death pension until October 1990, she was not entitled to the payment of improved death pension prior to November 1, 1990." R. at 5. The BVA also noted:

[The election card was] to be included with the March 1979 Section 306 death pension check. Although the appellant maintains that she did not receive the [election card], this has not been substantiated. In any event, even if the forms were not sent to her or she did not receive them, this would not provide a basis for favorable action in connection with the appellant's claim. Although the VA makes a concerted effort to apprise veterans and other beneficiaries of all VA benefits to which they might be entitled, the final responsibility for applying for VA benefits rests with the claimant.

R. at 7.

## II.

Pursuant to section 306(a)(1)(A) of the Act, the DVB issued Circular 21–79–3 in order to implement the statutory right of election. The circular provided that all beneficiaries receiving certain pensions as of January 1979 "will be furnished an election card." The BVA failed to distinguish between "furnished" and "mailed." In *Ashley v. Derwinski,* 2 Vet.App. 62 (1992), this Court examined "mailed" in the context of whether a claimant's evidence of not receiving of a BVA decision tolled the 120–day period within which a Notice of Appeal must be filed (the period begins "after the date on which notice of the decision is mailed"). *See* 38 U.S.C. § 7266. After noting the presumption that public officers properly discharge their official duties, *see United States v. Chemical Foundation,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926), and thus, that "the BVA is presumed to have mailed the decision on ... the date of the decision, ..." the Court held:

> Evidence that a BVA decision was not received is just that: evidence going to the question of receipt; it is not evidence going to the question of mailing. At most, evidence of non-receipt of a BVA decision, indeed the *fact* of non-receipt, arguably may raise an inference that the decision was not mailed but that is hardly the type of "clear evidence" which *Chemical Foundation* requires to rebut the presumption of regularity which "supports the official acts of public officers."

*Ashley,* 2 Vet.App. at 65 (quoting *Chemical Foundation,* 272 U.S. at 14, 47 S.Ct. at 6).

■ Here, unlike *Ashley,* the issue is not whether VA "mailed" the item in question, but whether the item was "furnished" to the appellant. To "furnish" means "to supply, provide, or equip with whatever is necessary or useful...." Webster's New World Dictionary 547 (3rd Coll. ed. 1988). We construe this definition to mean that the circular required more than mere mailing and that the election cards must have been actually received in order to have been "furnished."

■ However, "not all agency policy pronouncements which find their way to the public can be considered regulations enforceable in federal court." *Chasse v. Chasen,* 595 F.2d 59, 62 (1st Cir.1979). "[I]n order for VA handbooks, circulars, and manuals to have the 'force and effect of law' they must 'prescribe substantive rules—not interpretive rules.'" *Buzinski v. Brown,* 6 Vet.App. 360, 369 (1994) (quoting *Rank v. Nimmo,* 677 F.2d 692, 698 (9th Cir.1982)). The provision of the DVB circular at issue here is "substantive" because it implements, rather than interprets, the statutory right of election, and thus "affect[s] individual rights and obligations." *Nimmo,* 677 F.2d at 698 (citing *Chrysler Corp. v. Brown,* 441 U.S. 281, 301–03, 99 S.Ct. 1705, 1717–18, 60 L.Ed.2d 208 (1979)); *see also Flynn v. Brown,* 6 Vet.App. 500, 504–05 (1994); *Buzinski,* 6 Vet.App. at 369; *Fugere v. Derwinski,* 1 Vet.App. 103, 107 (1990). The fact that the circular dealt with the procedures VA was to employ to give effect to the Act is of no consequence: "[I]t affected a substantive right and its placement in a procedural manual cannot disguise its true nature as a substantive rule." *Fugere,* 1 Vet.App. at 107.

■ We hold, therefore, that the circular had the "force and effect of law." Evidence of receipt or non-receipt is not only relevant, it is determinative as to whether the Secretary complied with DVB Circular 21–79–3 and for this reason the BVA was incorrect in holding that "even if the forms were not sent to her or she did not receive them, this would not provide a basis for favorable action...."

Moreover, the BVA did not address the appellant's evidence that she never received an improved pension election card, except for the conclusory statement that "this has not been substantiated." R. at 7. Such a conclusory statement does not comply with the statutory requirement that the BVA provide a "written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions." 38 U.S.C. § 7104(d); *Gilbert v. Derwinski*, 1 Vet.App. 49 (1990). "A bare conclusory statement, without both supporting analysis and explanation, is neither helpful to the veteran, nor 'clear enough to permit effective judicial review,' nor in compliance with the statutory requirements." *Id.* at 57.

## III.

The February 11, 1993, Board decision is **VACATED,** and the matter is **REMANDED** for proceedings consistent with this Court's opinion.