Charles E. THOMPSON, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 93–264.

United States Court of Veterans Appeals.

Decided Aug. 25, 1995.

170

Charles E. Thompson, pro se.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; Thomas A. McLaughlin, Deputy Assistant General Counsel; and Edward V. Cassidy, Jr., were on the pleadings for the appellee.

Before KRAMER, IVERS, and STEINBERG, Judges.

STEINBERG, Judge, filed the opinion of the Court in which KRAMER, Judge, joined. IVERS, Judge, filed an opinion concurring in part and dissenting in part.

STEINBERG, Judge:

On March 22, 1993, the appellant, Vietnam-era veteran Charles E. Thompson, filed a Notice of Appeal (NOA) from a March 23, 1992, Board of Veterans' Appeals (BVA or Board) decision denying service connection for an acquired psychiatric disorder, to include post-traumatic stress disorder. The Secretary has moved the Court to dismiss this appeal on the ground that the appellant has failed to file a timely NOA. The appellant has moved to dismiss the Secretary's motion and for an award of litigation costs and attorney fees. The question of the Court's jurisdiction over the appeal was referred to this panel for disposition. For the reasons that follow, the Court will deny the appellant's motions to dismiss, grant the Secretary's motion, and dismiss the appeal for want of a timely filed NOA. The Court will also deny the appellant's motion for costs and fees. Even if the Court could construe the appellant's motion as an application for an award of reasonable attorney fees and expenses under the governing law, the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), he has not alleged that he is a "prevailing party" as is required. 28 U.S.C. § 2412(d)(1)(A); see Stillwell v. Brown, 6 Vet.App. 291 (1994); cf. March v. Brown, 7 Vet.App. 163, 166–70 (1994) (concluding that a pro se, nonattorney applicant's claim for fees under section 2412(d) must be denied because a pro se litigant is not entitled to attorney fees although, where other EAJA requirements are satisfied, a pro se litigant may, if a prevailing party, recover expenses "customarily charged to the client where the case is tried").

## I. Background

The appellant appended to his NOA a copy of a January 22, 1993, decision of a Department of Veterans Affairs (VA) regional office (RO) advising him that on March 23, 1992, the BVA had denied his claim for service connection for an acquired psychiatric disorder. In June 1993, the Court ordered the appellant to show cause why his appeal should not be dismissed for lack of jurisdiction. In July 1993, the appellant filed a response, contending that he had not received the BVA decision until January 1993.

Further, the appellant stated that he had been incarcerated at 111 Roswell Dr., Valdosta, Georgia, from August 31, 1991, to March 23, 1992, and that during this period his letters from the Roswell Dr. address to the VARO in Atlanta, Georgia, had let VA know that that was his mailing address. Based on the appellant's response, the Court ordered the Secretary to file a preliminary record with evidence demonstrating that the BVA had mailed its decision to the appellant's last known address, as is required by 38 U.S.C. § 7104(e). On August 2, 1993, the appellant supplemented his response with six exhibits, including letters from him to the Atlanta, Georgia, RO during September and October 1991 noting that he was at a "mental ward" at the Roswell Dr. address.

On August 12, 1993, the Secretary filed a motion to dismiss, along with a preliminary record (Prelim.R.) which contained correspondence, between the veteran and the RO during the period including September and October 1991, and a July 27, 1993, declaration of Robert L. Ashworth, Assistant Director of the BVA Administrative Service, verifying that the BVA decision had been mailed to 411 Canal St., Valdosta, Georgia, on March 23, 1992, and had not been returned as undeliverable. Prelim.R. at 86. That declaration further stated that the Canal St. address "was subsequently used by the VA Regional Office in Atlanta as the address of record, and that office corresponded with the veteran at that address." Ibid. Later that month, in response to the Secretary's motion, the appellant filed additional correspondence with attached copies of letters dated during the same period (October 1991) from the Atlanta RO addressed to him at the Roswell Dr. address.

Based on the appellant's submission, the Court, in a September 1993 order, directed the Secretary to file a response. In October 1993, the Secretary filed a response, attached to which was a September 23, 1993, BVA declaration of Mr. Ashworth, and also filed a Supplementary (Suppl.) Preliminary Record. In the response, the Secretary states that there had been a "six-week 'dialogue' between [the veteran] and VARO, Atlanta, wherein [the veteran had] certified his ad-

dress of record as 411 Canal St. on his VA Form 1–9 and indicated he was receiving temporary psychological analysis and treatment at 111 Roswell Drive." Secretary's Response (Resp.) at 5. The Secretary also states the following: "The [July 1993 Ashworth] declaration did not state or imply that 411 Canal Street was the exclusive address used by VARO, Atlanta; the preliminary record and supplementary record clearly indicate it was not the only address used by [the a]ppellant." Resp. at 7.

The Supplementary Preliminary Record contains copies of (1) a letter dated September 13, 1991, from the veteran to the RO and received by the RO on September 16, 1991 [hereinafter the September 16, 1991, letter] (Suppl.Prelim.R. at 1–5); (2) the veteran's VA Form 1–9, Substantive Appeal to the BVA [hereinafter 1–9 Appeal], dated September 19, 1991, received by the RO on September 20, 1991 (Suppl.Prelim.R. at 6–32); (3) a letter dated September 13, 1991, from the veteran to the RO, received by the RO on September 24, 1991 [hereinafter the September 24, 1991, letter] (Suppl.Prelim.R. at 33–34); (4) a letter dated October 9, 1991, from the RO addressed to the veteran at Roswell Dr. (Suppl.Prelim.R. at 35); (5) a letter dated October 13, 1991, from the veteran to the RO and received by the RO on October 17, 1991 [hereinafter the October 17, 1991, letter] (Suppl.Prelim.R. at 42–43); (6) an undated letter from the veteran to the RO, received by it on October 21, 1991 [hereinafter the October 21, 1991, letter] enclosed with which was a copy of a letter dated October 16, 1991, from the veteran to the Disabled American Veterans (DAV) (Suppl.Prelim.R. at 44–49); (7) an undated letter from the RO addressed to the veteran at Roswell Dr. (Suppl.Prelim.R. at 50); (8) a letter dated October 31, 1991, from the RO addressed to the veteran at Roswell Dr. (Suppl.Prelim.R. at 51); (9) a letter dated November 7, 1991, from the RO addressed to the veteran at Canal St. (Suppl.Prelim.R. at 52); and (10) a letter dated January 7, 1992, from the RO addressed to the veteran at Canal St. Suppl.Prelim.R. at 54.

The veteran's September 16, 1991, letter included a return address at Roswell Dr.

Suppl.Prelim.R. at 1. The veteran's September 20, 1991, 1–9 Appeal listed the Canal St. address on the form. Suppl.Prelim.R. at 6. The veteran's September 24, 1991, letter stated:

I want to let the hearing board know that I may not be able to attend the appeal hearing schedule for: 10–8–91 because I am in a mental ward here at the mental ward at 111 Roswell [D]r., Valdosta, Ga. 31601. If I am released I will attend the hearing 10–8–91.

Suppl.Prelim.R. at 33. The RO's October 9, 1991, letter was addressed to the veteran at Roswell Dr. and stated that the hearing would be held on November 19, 1991. Suppl.Prelim.R. at 35. The veteran's October 17, 1991, letter to the RO stated:

I, Charles Edward Thompson, do come forward now and ask this honorable hearing board for a postponement of my hearing which is schedule[d] for 11–19–91 in Atlanta, Ga. at [1:30 pm]. I make this request known because I am **continually confined here at this institution.** I can't go my own way[,] I must be helped, and they are going to keep me here until I am better able to live in society. They've increased my medication and I hope to be out of all my involvements here soon both physically and mentally.... If in the event I do get released from this mental ward (which is guarded by the authorities here), before 11–19–91[,] I will contact your office.

Suppl.Prelim.R. at 42 (emphasis added). The veteran's October 16, 1991, letter to the DAV, enclosed in the October 21, 1991, letter to VA, showed a return address as "111 Roswell Dr., Valdosta, GA 31601" at the top of the letter and that "as soon as I get released out of this place I want ... to file a new claim". Suppl.Prelim.R. at 46–47. The undated letter from the RO was addressed to the veteran at Roswell Dr. and stated that the hearing on November 19, 1991, had been rescheduled to December 10, 1991. Suppl.Prelim.R. at 50. The RO's November 7, 1991, letter was addressed to the veteran at Canal St., stated that his claim was being processed, and requested further information from him regarding his medical treatment.

Suppl.Prelim.R. at 52. The copy (in the claims file) of the RO's October 31, 1991, letter was addressed to the veteran at Roswell Dr., confirmed that the hearing would be held on December 10, 1991, and contained the following handwritten note: "No show ... 12–10." Suppl.Prelim.R. at 51. The RO's January 7, 1992, letter was addressed to the veteran at Canal St. and stated that his appeal was being certified to the BVA for disposition. Suppl.Prelim.R. at 54.

The September 1993 Ashworth declaration states that to the best of his knowledge and belief (1) the March 23, 1992, BVA decision "was mailed to the [veteran]'s address of record, 411 Canal Street, Valdosta, GA 31601" which "may be verified by the attached computer printout of the address of record that appears on the Board's computer tracking system, VACOLS"; (2) the January 1992 and November 1991 VA letters sent to the veteran at the Canal St. address were not returned as undeliverable; and (3) these two letters "seem to indicate that the Atlanta [RO] ... considered 411 Canal Street, Valdosta, GA 31601, to be either the address of record or the last known address for the appellant ... based on the [1–9 Appeal]".

In addition to acknowledging that the RO's two October 1991 VA letters were addressed to the veteran at Roswell Dr., the September 1993 Ashworth declaration states that the veteran "submitted two letters received October 17, 1991 [ (Suppl.Prelim.R. at 36–41, 42–43) ], and October 21, 1991 [ (Suppl.Prelim.R. at 44–49) ], at the Atlanta [RO] which indicated that he was still hospitalized [at a mental health facility at 111 Roswell Dr., Valdosta, GA 31601]" and that "[a]n undated letter from the [RO to the veteran] at 1111 [sic] Rosewell [sic] Dr., Valdosta, GA [ (Suppl.Prelim.R. at 50) ], advised the [veteran] that due to a scheduling conflict[,] he was rescheduled to appear at a hearing on December 10, 1991". Declaration (declar.), paragraph (para.) 5, Exhibit 1 attached to the Resp. This Ashworth declaration states: "It is Board policy to presume that the last address to which the agency of original jurisdiction forwarded mail is the address of record in the appeal, particularly if [there is] nothing unusual in the claims folder such as a letter returned by postal authorities as unde-

liverable." *Id.* at para. 6. The declaration goes on to note that there was "nothing in the claims folder to indicate that [the October 31, 1991,] letter was returned to VA as undeliverable", and that an "annotation on [VA's copy of] the October 31, 1991, letter indicates that the [veteran] failed to report to this hearing scheduled on December 10, 1991." *Id.* at para. 5.

In January, February, and May 1994, the Court received correspondence from the appellant indicating that his address had changed. On June 7, 1994, the Court received a letter from the appellant. On June 14, 1994, the Clerk of the Court issued an order construing that letter as a reply to the Secretary's October 1993 response. On June 21, 1994, the Court again received from the appellant correspondence stating that he had not received a copy of the Secretary's response and requesting a copy of such response. On June 29, 1994, the Operations Manager of the Court responded to the appellant's letters and attached a copy of the Secretary's October 1993 response. On July 13, 1994, the appellant filed a motion for leave to file a reply to the Secretary's response and attached his reply thereto. He states that the Secretary never mailed him a copy of the response and that he did not receive the Secretary's response until July 5, 1994. The Court will grant the appellant's motion for leave to reply.

In his reply, the appellant states that (1) the October 9 and October 31, 1991, RO letters he had received contained his "last known address" and that "the BVA did not mail their decision to my last known address" (Reply at 4–5); (2) the Secretary "has never explained to the Court why the 2 letters dated 10–9–91 and 10–31–91 w[ere] not included in the preliminary record as called for by the Court" (Reply at 6); (3) "[t]here is no way the VARO ever los[t] contact with me at this time from 9–1991 to 3–23–1992 when the BVA claims they mail[ed] their decision as they now claim[ ]", because he had been incarcerated at the county jail at the Roswell Dr. address and that "every letter I wrote to the VARO had the same address on it: 111 Roswell Dr., Valdosta, Georgia 31601" (Reply at 9, 15); (4) the RO had no reason to "go

back and use an old address on record and call it my last known address" (Reply at 15); and (5) "it wasn't until January or February 1993 before I received word of the BVA decision because that was d[ur]ing the time the VARO, Atlanta, Ga., mailed me my records to my prison address while I was at WARE C.I. in Waycross, Ga." (Reply at 18).

On March 10, 1995, the appellant filed a motion to dismiss the Secretary's "responses and motions against his right to appeal his case" and "to award him litigation cost and attorney fee." Br. at 3.

On April 27, 1995, the Court ordered the Secretary to file with the Court any and all forms in the appellant's claims folder designating a representative and appropriate affidavits as to (1) the appellant's designation of the Georgia State Department of Veterans Services (SDVS) as his authorized representative at the time of the issuance of the BVA decision and the representative's mailing address as used by the Board; and (2) the procedures VA used in mailing a copy of that decision to the representative. The Court further ordered the Secretary to seek to obtain appropriate affidavits from the SDVS, or any other authorized representative, as to whether and, if so, when it received a copy of that BVA decision or notice of it.

In response, the Secretary submitted a copy of a January 23, 1991, VA Form 21–22, Appointment of Veterans Service Organization As Claimant's Representative (power of attorney (POA)), filed with VA by the veteran. On the form, the veteran stated the following in response to item # 3, "Name of Service Organization": "Georgia Department of Veterans Service (SDVS), Atlanta, GA.". The veteran, in response to item # 9, "Address of Claimant", provided "501 Church Street, Valdosta, GA. 31601". The veteran did not fill in item # 12 which requested the "Name and Address of Chapter, Post or Unit". The Secretary also submitted a May 1995 BVA declaration from Mr. Ashworth stating that the Board "mailed" a copy of the decision in accordance with "flat mail procedures" (described in part II.C.1., below) and that the "Board has no means of determining the exact date on which the [SDVS], Georgia, received the Board's March 23, 1992, deci-

sion." May 1995 Ashworth declar., para. 4 and 8.

The Secretary also submitted a May 15, 1995, affidavit from Larry Roby, Claims Counselor, SDVS, Accredited Representative, stating that the BVA "cover letter" for the March 1992 Board decision "was ... inside the claims folder; however, [it] did not have a VA date stamp". The affidavit states that a phone call "was placed to the SDVS field office in Valdosta[,] Georgia, Ms. Joyce Boyd, who verified that a copy of the BVA decision dated March 23, 1992, was received and has a date stamp indicating so dated March 31, 1992[,] in the lower right hand corner of the field office copy". Copies of the "cover letter" and BVA decision apparently provided by the Valdosta SDVS office were attached to the affidavit. In May and June 1995, the appellant filed responses.

## II. Analysis

■ The ultimate burden of establishing jurisdiction rests with the appellant. *See McNutt v. G.M.A.C.,* 298 U.S. 178, 188–89, 56 S.Ct. 780, 784–785, 80 L.Ed. 1135 (1936); *Bethea v. Derwinski,* 2 Vet.App. 252, 255 (1992). This Court does not have jurisdiction over an appeal from an adverse BVA decision unless the NOA is timely filed. *See Butler v. Derwinski,* 960 F.2d 139, 141 (Fed.Cir.1992); *Dudley v. Derwinski,* 2 Vet.App. 602, 603 (1992) (en banc order). To be timely filed under Rule 4 of this Court's Rules of Practice and Procedure (Rules) and precedents construing 38 U.S.C. § 7266(a) at the time the NOA was mailed here, an NOA must have been received by the Court within 120 days after notice of the BVA decision was mailed to the claimant and to the claimant's authorized representative, if any, at their respective last known addresses. *See Butler,* 960 F.2d at 140–41; *Trammell v. Brown,* 6 Vet.App. 181, 182 (1994). (Effective November 7, 1994, Congress amended 38 U.S.C. § 7266(a) to provide that an NOA "shall be deemed to be received by the Court ... [o]n the date of receipt by the Court, if the notice is delivered" or "[o]n the date of the United States Postal Service postmark stamped on the cover in which the notice is posted, if the notice is properly addressed to the Court and

is mailed ... [and if the] postmark ... is ... legible." Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 511, 108 Stat. 4645, 4670 (1994). The Court amended its Rule 4(a), effective November 7, 1994, to implement the law change. U.S.Vet.App.R. 4(a); Misc. No. 7–94.) This Court's jurisdiction derives exclusively from statutory grants of authority provided by Congress and may not be extended beyond that permitted by law. See *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 818, 108 S.Ct. 2166, 2178–79, 100 L.Ed.2d 811 (1988); *Machado v. Derwinski*, 928 F.2d 389, 391 (Fed. Cir.1991); *Trammell, supra; Dudley, supra.*

### A. Interpretation of Applicable Statutory and Regulatory Provisions

Section 7104(e) of title 38, U.S.Code, requires that the BVA "promptly mail a copy of its written decision to the claimant and the claimant's authorized representative (if any) at the **last known address** of the claimant and at the last known address of such representative (if any)." 38 U.S.C. § 7104(e) (emphasis added). In *Davis v. Brown*, 7 Vet. App. 298 (1994), the Court held that "the phrase 'the BVA shall promptly mail' in 38 U.S.C. § 7104(e) means that the BVA decision must be correctly addressed, stamped with the proper postage, and delivered directly by the BVA into the custody of the U.S. Postal Service". *Id.* at 303. The Court has not yet issued an opinion which focuses specifically on how, pursuant to 38 U.S.C. § 7104(e), the "last known address" of a VA claimant is determined. Nor has VA provided much illumination on this matter through its regulations, the VA ADJUDICATION PROCEDURE MANUAL, M21–1 (MANUAL M21–1) (*see* MANUAL M21–1, Part V, para. 13.03), or VA application-form instructions (see VA Form 21–526, Veteran's Application for Compensation or Pension; VA 1–9 Appeal; VA Form 572, Request for Change of Address/Cancellation of Direct Deposit, all printed in Appendices to Michael E. Wildhaber, et al., National Veterans Legal Services Project, VETERANS BENEFITS MANUAL 3–172, S3–115, 6–135, S6–45, 10–25 (1991)).

VA regulations merely reiterate the section 7104(e) statutory command by providing that a copy of a Board decision is to be mailed "to the parties and their representatives at their last known addresses." 38 C.F.R. § 19.8 (1994). The regulations do not expressly require a claimant to file a change-of-address request form or even to notify VA in the event of a change of address. In the absence of such law or regulation, the Court must determine the meaning of "last known address" and the Board's obligation to provide certain information to the claimant at that address and to the claimant's representative, if any, at the representative's last known address.

**1. Claimants' rights to notice of decision and appellate rights.** In addition to section 7104(e), the law and VA regulations expressly require the Secretary to "provide" to each VA-benefits claimant (and to the claimant's representative) timely notice of any VA-benefits adjudication decision accompanied by "an explanation of the procedure for obtaining review of the decision". 38 U.S.C. § 5104(a); see also 38 C.F.R. § 3.103(a), (b)(1) (1994); *cf. Montalvo v. Brown*, 7 Vet.App. 312, 314 (1995) (distinguishing between requirements that item be "mailed" and "furnished" and holding that latter term, defined to include meaning of "to provide" in VA circular for purposes of VA pension election, requires item to "have been actually received"). The Court held in *Rosler v. Derwinski*, 1 Vet.App. 241 (1991), that the section 5104(a) notice-provision mandate applies to decisions made in the Secretary's name by the Board as well as by agencies of original jurisdiction (primarily by VAROs). *Id.* at 249; *see also* 38 U.S.C. § 7104(a) (providing that Board shall make decision "on appeal to the Secretary"); 38 C.F.R. § 20.101 (1994) (providing that "[a]ll questions of law and fact necessary to a decision by the Secretary [ ] under a law that affects the provision of benefits ... are subject to review on appeal to the Secretary", with decisions "in such appeals" being "made by the Board"); 38 U.S.C. § 7252(a), (b) (providing for "review" of BVA decisions in this Court). In *Rosler*, the Court required the BVA, upon denial of a motion for Board reconsideration, to advise the claimant of the new 120–day judicial-appeal period that commences under 38 U.S.C. § 7266(a), as to the

underlying substantive BVA decision, on the date of the mailing of the BVA's notice of denial of the motion for reconsideration. *Rosler*, 1 Vet.App. at 249. The Court held:

> [W]ith respect to adjudications made after January 31, 1990, the Secretary of Veterans Affairs is required by law to advise VA claimants **throughout the claims adjudication process** of their subsequent appellate rights as to those adjudications. *See* Veterans' Benefits Amendments of 1989, Pub.L. No. 101–237, § 115(a)(b), 103 Stat. 2062, 2065–66 (1989); 38 U.S.C. § 3004(a) (Supp. I 1990) [currently 38 U.S.C. § 5104(a) ] (requiring the Secretary to include with notice of VA adjudication decisions "an explanation of the procedure for obtaining review of the decision").

*Ibid.* (emphasis added).

Section 5104(a) was enacted approximately one year after the section 7104(e) mailing requirement was enacted in the Veterans' Judicial Review Act, Pub.L. No. 100–687, § 205, 102 Stat. 4105, 4111 (1988). Section 5104(a) was derived from a Senate-passed provision (in section 705 of S. 13, 101st Cong., 1st Sess., passed by the Senate as a substitute amendment to H.R. 901 on October 3, 1989), which would have "require[d] VA, at each stage of its claims-adjudication proceedings [specifically including BVA proceedings] in a case in which it ha[d] not fully awarded the claim, to provide the claimant and the claimant's representative, if any, clearly-written notice of the rationale for the decision and a detailed description of the subsequent procedural alternatives through which the claim might be pursued." S.Rep. No. 126, 101st Cong., 1st Sess. 296–97 (1989), *reprinted in* 1989 U.S.C.C.A.N. 1469, 1702–03; *see also* 135 Cong.Rec. H9,110 (daily ed. Nov. 20, 1989) (Explanatory Statement on the Compromise Agreement on H.R. 901), *reprinted in* 1989 U.S.C.C.A.N. 1856, 1860. The House and Senate Committees on Veterans' Affairs deemed the provision of such notices to be " 'a fundamental part of due process rights' ". S.Rep. No. 126 at 297 (quoting Explanatory Statement on the Compromise Agreement on S. 11, 134 Cong.Rec. S31,468 (statement of Sen. Cranston), S31,776 (1988) (Explanatory

Statement printed as part of debate on final passage)).

VA regulations codify this Secretarial-notification obligation by establishing a "right" and "entitlement" on the part of a VA claimant to certain notices. Specifically, 38 C.F.R. § 3.103 provides:

> (a) *Statement of policy:* Every claimant has the right to written notice of the decision made on his or her claim, the right to a hearing, and the right of representation. . . .

> (b) *The right to notice*—(1) General. Claimants and their representatives are entitled to notice of any decision made by VA affecting the payment of benefits or the granting of relief. Such notice shall clearly set forth the decision made, any applicable effective date, the reason(s) for the decision, the right to a hearing on any issue involved in the claim, the right of representation and the right, as well as the necessary procedures and time limits, to initiate an appeal of the decision.

38 C.F.R. § 3.103(a), (b)(1); *cf.* 38 C.F.R. § 3.103(f) (1994) (also expressly providing for notification of adverse decisions (of an agency of original jurisdiction) that may be appealed to BVA "by filing a Notice of Disagreement"). This Court has held specifically that the provisions of paragraph (c)(2) of 38 C.F.R. § 3.103 (regarding the obligation to provide advice to VA claimants by VA hearing officers) were fully applicable to the BVA. *Douglas v. Derwinski*, 2 Vet.App. 435, 440–42 (1992) (en banc).

**2. Jurisdictional nature of judicial-appeal period.** The importance of a claimant's notices of a BVA decision and of his or her appellate rights is made clear by the direct effect that receipt of those notices has on a VA claimant's ability to seek judicial review in this Court. The timely filing of an NOA within the 120–day statutory judicial-appeal period, which commences upon the mailing of notice of the BVA decision, together with its notice of appellate rights, *see* 38 U.S.C. §§ 7266(a), 5104(a), has been determined by this Court and the U.S. Court of Appeals for the Federal Circuit to be mandatory and jurisdictional; that is, unless a claimant files an NOA within that 120 days,

this Court has no jurisdiction to consider the appeal. *See Butler,* 960 F.2d at 141; *Dudley, supra; Jones (Ponce) v. Derwinski,* 2 Vet.App. 362, 363 (1992) (per curiam); *Torres v. Derwinski,* 1 Vet.App. 15, 17 (1990). So rigorous has this jurisdictional concept been held to be that VA claimants adversely affected by a BVA decision who miss the 120–day filing deadline can be granted no extension even where they assert inability to comply for "good cause" (*see Butler, supra* ), or because of a mental impairment (*see Dudley* and *Jones (Ponce),* both *supra* ), or because of incorrect or misleading information provided by the Court itself (*see Dudley, supra* ). Equitable considerations normally considered a sufficient basis for judicial extension of a filing deadline where private litigants are involved, *see Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990), *rehearing denied sub nom. Irwin v. Dept. of Veterans Affairs,* 498 U.S. 1075, 111 S.Ct. 805, 112 L.Ed.2d 865 (1991), are not available in this Court to provide any relief in the case of an untimely-filed NOA. *See Dudley, supra* (doctrine of equitable estoppel cannot apply in extending the 120–day period); *Jones (Ponce),* 2 Vet.App. at 363 (expressly deeming Federal Circuit's *Butler* opinion to have overruled that part of this Court's opinion in *Elsevier v. Derwinski,* 1 Vet.App. 150, 154 (1991), which had suggested that the doctrine of equitable tolling was "potentially applicable" to the 120–day period). *But see Dudley,* 2 Vet.App. at 603–06 (Kramer and Steinberg, JJ., dissenting).

■ **3. Construing sections 5104(a) and 7104(e) together.** In considering the specific "mail" command in section 7104(e) and the more general "provide" requirement in section 5104(a), the Court must construe them together so that each is part of a "harmonious whole". *Talley v. Derwinski,* 2 Vet.App. 282, 286 (1992) (quoting 2A NORMAN J. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION, § 46.05 (4th ed. 1984)); *see also Smith (Wm.) v. Brown,* 35 F.3d 1516, 1523 (Fed.Cir.1994) ("we must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the whole law") (quoting *United States Nat. Bank of Oregon v. Independent Ins. Agents of Am.,*

*Inc.,* 508 U.S. 439, ——, 113 S.Ct. 2173, 2182, 124 L.Ed.2d 402 (1993) and citing a long line of Supreme Court cases). It "is our role to make sense rather than nonsense out of the *corpus juris.*" *Smith, supra* (quoting *West Va. Univ. Hosps. v. Casey,* 499 U.S. 83, 100–01, 111 S.Ct. 1138, 1147–48, 113 L.Ed.2d 68 (1991)). We conclude that section 5104(a)'s general command to provide certain types of notices is given content as to BVA decisions by section 7104(e)'s more specific command to provide copies of BVA decisions by "mail". *See* 2B NORMAN J. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION, § 51.02 at 121 (5th ed. 1992). The types of notice required by section 5104(a) (including notice of appellate rights) must be mailed along with a copy of the BVA decision. So read, the provisions are compatible and do not conflict.

### B. Presumption of Regularity as to Claimant's Copy of BVA Decision

**1. The presumption.** This Court has held that the "presumption of regularity" that attends the official actions of governmental officials imposes a presumption that " 'the Secretary and the BVA properly discharged [their] official duties by mailing a copy of a BVA decision to the claimant and [to] the claimant's representative, if any, on the date the decision is issued', and that that presumption can be overcome only by 'clear evidence to the contrary' ". *Davis,* 7 Vet. App. at 300 (quoting *Ashley v. Derwinski,* 2 Vet.App. 307, 308–309 (1992) (*Ashley II* )); see *Morris v. Sullivan,* 897 F.2d 553, 560 (D.C.Cir.1990) (quoting *United States v. Chemical Foundation,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926) to the effect that "[t]he presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties"); *see also Chute v. Derwinski,* 1 Vet.App. 352, 353 (1991) (per curiam order) (presumption of regularity rebutted where veteran claimed not to have received BVA decision and provided evidence of having made inquiries to VA after decision

was mailed and VA did not provide evidence of mailing of decision).

In *Ashley II*, the Court held:

[W]here an appellant submits clear evidence to the effect that the BVA's "regular" mailing practices are not regular or that they were not followed, the Secretary is no longer entitled to the benefit of the presumption and the burden shifts to the Secretary to establish that the BVA decision was mailed to the veteran and the veteran's representative, if any, as required by 38 U.S.C. § 7104(e).

*Ashley II*, 2 Vet.App. at 309; see *also Davis, supra* (citing *Ashley II, supra* ).

█ It seems clear that the presumption of regularity extends to the BVA's mailing of notice of its decision to the correct address of the claimant. *See Piano v. Brown,* 5 Vet. App. 25, 27 (1993) (Board's use of an incorrect address in mailing BVA decision to claimant constituted "clear evidence" needed to rebut presumption of regularity); *Ashley v. Derwinski,* 2 Vet.App. 62, 67 (1992) (*Ashley I* ), *sustained on reconsid.,* *Ashley II, supra.* That presumption applied in the present case.

**2. Presumption rebutted.** The record in this appeal shows that in March 1992, at the time the BVA issued its decision, the claims folder disclosed different addresses for the veteran as of the time of VA's last contact with him—Canal St. (where the veteran apparently had resided)—and as of the time of his last contact with VA—Roswell Dr. (where the veteran was institutionalized or incarcerated). As of the date of the BVA decision, VA's most recent exchange of correspondence with the veteran involved a six-week period of correspondence back and forth between the RO and the veteran during September and October 1991 that could have been reasonably construed to indicate that the veteran was institutionalized or incarcerated at a "mental ward" at the Roswell Dr. address, that his stay there was to continue for an unknown period, and that the RO knew this because it sent him letters (three) exclusively at the Roswell Dr. address (Suppl.Prelim.R. at 35, 50, 51). In its October 9, 1991, letter in response to the veteran's September 24 letter, the RO sent the hearing-rescheduling notice to him at the Roswell Dr. address, and subsequently sent two more letters to him at the Roswell Dr. address (Suppl.Prelim.R. at 50, 51), notwithstanding that the veteran had given the Canal St. address on the September 20, 1991, 1–9 Appeal (Suppl.Prelim.R. at 35). Then, in November 1991 and in January 1992, the RO used the Canal St. address without first determining that the veteran had been released from the institution at the Roswell Dr. address. Suppl.Prelim.R. at 52, 54. There was nothing in the claims file to indicate that either the October 31, 1991, RO letter addressed to the veteran at Roswell Dr. or the November 1991 and January 1992 RO letters addressed to the veteran at Canal St. had been returned as undeliverable. *See* September 1993 Ashworth declar., paras. 4 and 5. Thus, the RO did not follow a consistent pattern in attempting to communicate with the veteran.

During this period, the veteran sent five communications to the RO. Only the September 20, 1991, 1–9 Appeal gave the Canal St. address as his address. Three (subsequent) communications indicated Roswell Dr. as his return address. The last communication VA received from the veteran before the March 1992 decision was the October 21, 1991, letter to the RO enclosing a copy of his October 16 letter to the DAV that contained, at the top of the page, Roswell Dr. as the return address. Suppl.Prelim.R. at 44–49. The record does not contain a letter from the veteran advising VA that he had been released from the institution at the Roswell Dr. address or that that address had changed or was no longer where he was located. Indeed, the Secretary concedes in his October 1993 response: "The [July 1993 Ashworth] declaration did not state or imply that 411 Canal Street was the exclusive address used by VARO, Atlanta; the preliminary record and supplementary record clearly indicate it was not the only address used by [the a]ppellant." Secretary's Resp. at 7.

█ Accordingly, against this background of applicable facts and the law and regulation set forth above, the Court finds that the presumption that the Board mailed

the requisite notices to the veteran's "last known address" under 38 U.S.C. § 7104(e) was rebutted on the facts of this case by the clear evidence that the veteran claimed not to have received the BVA decision; that he provided evidence in support of that contention in the form of his letters to the RO from the Roswell Dr. address and of RO letters to him at the Roswell Dr. address, rather than the Canal St. address, during the September–October 1991 period; that the content of the veteran's claims folder before the BVA in March 1992 showed an irregular process of communication between the veteran and the RO, in which the veteran used more than one return address and the RO used more than one address for the veteran and sent several mailings to the veteran at an address other than the one to which the BVA directed its mailing of a copy of the March 1992 Board decision; and that the Board did not mail the requisite notices to both addresses used. *Cf. Hyson v. Brown*, 5 Vet.App. 262, 265 (1993) (holding that when confronted with situation in which forfeiture of benefits might result, "[i]t is only where a file discloses other possible and plausible addresses that an attempt should be made to locate [a veteran] at the alternate known address"). Hence, the presumption that the Secretary had properly discharged his duties under 38 U.S.C. §§ 5104(a) and 7104(e) and 38 C.F.R. §§ 3.103(a), (b)(1) and 19.8 is rebutted with respect to the Board's mailing. *See Piano, Ashley II,* and *Chute,* all *supra.*

■ **3. Secretary's burden of persuasion.** The shifting of the burden of persuasion to the Secretary to establish that the BVA properly discharged its duties under these authorities requires the Court to examine the information that was before the BVA in the veteran's claim file at the time the Board issued its decision. In evaluating the actions of the Board in determining a claimant's last known address for purposes of mailing, the following considerations must be borne in mind: The Secretary's statutory obligation imposed by 38 U.S.C. § 5104(a) to "provide" and the regulatory "right" bestowed by 38 C.F.R. § 3.103(a), (b)(1) on VA claimants "to written notice" both regarding the adjudicative disposition of their VA-benefits claims and their appellate rights; the

strict jurisdictional nature of compliance with the 120–day NOA filing period which is triggered by mailing of notice of the BVA decision; the nonadversarial nature of the VA claims-adjudication process, *see Douglas*, 2 Vet.App. at 439–41; and the essential nature of the documents to be mailed—the Board's decision and its accompanying notice of appellate rights. In light of these factors, it would not generally be reasonable for the Board merely to accept as the "last known address", as it did here (*see* September 1993 Ashworth declar., para. 6), the last address **used by the RO** without the Board itself reviewing the claims file. *Cf. Hyson, supra.*

■ On the current facts, the Court holds, for the following reasons, that the Secretary met his burden of persuasion in this case by mailing the BVA decision to the address **provided by the veteran** on his 1–9 Appeal, the Canal St. address. The 1–9 Appeal, also called the "formal appeal" (38 U.S.C. § 7105(d)(3)) and the "Substantive Appeal" (38 C.F.R. §§ 20.200, 20.202–20.204 (1994)), is the last document a VA claimant files in order to perfect an appeal of an adverse RO decision to the BVA. *See* 38 U.S.C. § 7105(d)(3); 38 C.F.R. §§ 20.200, 20.202; *Roy v. Brown,* 5 Vet.App. 554, 555–56 (1993); *Rowell v. Principi,* 4 Vet.App. 9, 16–18 (1993). Absent any evidence that the veteran took affirmative steps after filing the 1–9 Appeal to change the address he provided on it by specifically directing VA to send all correspondence and notices to an address other than that provided on the 1–9 Appeal, and absent any evidence that mailings to the 1–9 Appeal address had been returned as undeliverable, *cf. Hyson, supra,* the Court holds that the BVA was entitled to rely on that address as being the veteran's "last known address" and to use it for purposes of mailing a copy of its decision. *Cf. Leo v. Brown,* 8 Vet.App. 28, 30 (1995) (Board must direct all correspondence to veteran's representative at address provided for representative by veteran on VA official POA Form 23–22). In this case, the veteran took no such steps; nor were any mailings to the Canal Street address returned to the RO or BVA as undeliverable. *See* September 1993 Ashworth declar., para. 4.

### C. Presumption of Regularity as to Representative's Copy of BVA Decision

**1. The presumption.** The *Ashley* presumption of regularity applies equally to the Board's mailing of its decision to a claimant's authorized representative. *See Davis*, 7 Vet.App. at 299; *Trammell*, 6 Vet.App. at 183.

**2. Presumption rebutted.** In *Trammell*, the Court held that that presumption of regularity in mailing to the veteran's representative was rebutted where the Board had used an internal/private contractor/U.S. Postal Service distribution procedure ("flat mail") to send a copy of the BVA decision to the RO for delivery to the representative. *Trammell*, 6 Vet.App. at 183; *see also Davis*, 7 Vet.App. at 300. Under *Trammell* and *Davis*, a BVA decision delivered by flat mail rather than "sent directly" to the representative via the U.S. Postal Service is not properly mailed within the meaning of 38 U.S.C. § 7104(e). *See Davis* and *Trammell*, both *supra; see also Leo*, 8 Vet.App. at 30.

On the present facts, the flat mailing process used for delivery to the SDVS as the veteran's representative constituted the clear evidence needed to rebut the presumption that the BVA properly mailed the decision to the veteran's authorized representative pursuant to 38 U.S.C. §§ 5104(a), 7104(e). The "burden of establishing the mailing to the veteran's representative in accordance with section 7104(e) therefore devolved upon the Secretary. *See Ashley [II]*, 2 Vet.App. at 309." *Davis*, 7 Vet.App. at 303; *see also Leo, supra.* Just as in *Leo, Davis*, and *Trammell*, in the instant case the Secretary did not carry the burden of establishing proper mailing to the veteran's authorized representative, and the Court therefore holds that the Board did not mail its decision to the SDVS as required by section 7104(e). *See Davis, supra; Trammell*, 6 Vet.App. at 183; *see also Leo*, 8 Vet.App. at 30.

**3. Curing defective mailing by actual receipt.** Even when the Board has failed to comply with section 7104(e)'s mailing requirement, that defect can be cured by proof of actual receipt of a copy of the BVA decision by the claimant's authorized representative. *See Leo, supra* (citing *Davis, supra; Fluker v. Brown*, 5 Vet.App. 296, 298 (1993); *Ashley II*, 2 Vet.App. at 311).

In *Leo*, the appellant had provided his representative's complete mailing address ("The American Legion, Greenville County, Veterans Affairs Office, Greenville County Square, Suite 1500, Greenville, S.[C]. 29601–3660") in the space provided for his representative's name on the POA Form 23–22, "Appointment of Veterans Service Organization as Claimant's Representative", but the Board had forwarded a copy of its decision to the Legion's national headquarters, colocated with the Board's Washington, D.C., office, and sent another copy to the Legion's local office in Columbia, South Carolina, via the flat mail procedure. Because the appellant had given the complete address of his representative on the POA form, the Court concluded that the Board was required to direct all correspondence intended for the representative to the address he provided on that VA form, the local address. The representative's address having been clearly identified, the Court stated in *Leo* that it need not decide whether, and, if so, under what circumstances, and for what purposes, the **national** office of a veterans' service organization could be considered a claimant's representative.

Similarly, we are not called upon in the instant case to decide that question because we hold that *Leo* controls our disposition of the question of the identity and location of the veteran's authorized representative.

The Court notes that if it were to conclude that the Valdosta SDVS office was the veteran's representative, the determination of whether the mailing defect had been cured would be very readily made in the affirmative. However, on the facts of this case, the veteran's identification of "(SDVS), Atlanta, GA" was the equivalent of the veteran's identification of the Greenville American Legion office in *Leo* and designated the Atlanta SDVS office as the veteran's authorized representative. The question then becomes whether the Atlanta SDVS office actually received a copy of the BVA decision and, if so, when, so as to cure the defect in mailing.

In considering this question, the Court is substantially hindered by the incomplete nature of the affidavits filed by the Secretary in response to the Court's April 21, 1995, order. Those affidavits omitted information as to (1) whether the Atlanta VARO did in this case receive a copy of the BVA decision sent via flat mail or otherwise and forwarded a copy to the Atlanta SDVS; (2) what the RO did include, or would have included in regular course, in and on any copy it sent (such as a date stamp, cover letter, or a statement of appellate rights); (3) how delivery was, or would in regular course be, made to a representative colocated at the RO, and what record was, or would be in regular course, made of such delivery by the RO; (4) whether the SDVS Atlanta office attests to having received a BVA decision copy, its explanation as to where it receives BVA decision copies in regular course, and its explanation for having only a copy of the BVA "cover letter" in the veteran's claims folder in its office; (5) whether the SDVS Atlanta office mailed, or would have mailed in regular course, a copy of a BVA decision to the SDVS Valdosta office; and (6) the lack of an affidavit provided directly by the Valdosta SDVS office. The Court calls attention to these deficiencies in order that the Secretary's counsel, as an officer of the Court (as well as appellants), will be put on notice of the specificity of affidavit evidence (including third-party affidavits which the Secretary is directed to attempt to provide) that should be provided in aid of the Court's finding of facts necessary to determine its jurisdiction. *See Stokes v. Derwinski,* 1 Vet.App. 201, 203–04 (1991); *see also Grubbs v. Derwinski,* 2 Vet. App. 78 (1991) (per curiam order).

Despite the deficient affidavits in this case, however, there are enough facts presented to enable the Court to conclude that the Atlanta SDVS did indeed receive from the Atlanta RO a copy of the BVA decision and that the Atlanta SDVS office had received that copy by March 31, 1992, or April 3, 1992, the dates stamped on the copy provided to the Court by the Valdosta SDVS office. The Court infers that the Atlanta SDVS had provided that copy to the Valdosta SDVS office from the facts that the Atlanta SDVS office had a BVA cover sheet in its file

identified with the veteran's name and that the Valdosta SDVS office had a copy of the BVA decision and cover sheet with a handwritten annotation in the upper right hand corner "CC: Dept. of Veterans Service, DVARO, Atlanta, GA", the notation which, according to the Ashworth May 1995 declaration, paragraphs 4 and 6, the BVA would have made, in regular course, to designate to which RO the decision copy should be provided by flat mail. Moreover, the Ashworth declaration stated that the annotation "indicate[s] that the copy of the decision was to be sent to [SDVS], Georgia, located at the Atlanta, Georgia, VARO." May 1995 Ashworth declar., para. 4. The Court finds that no other inference follows as reasonably from the facts attested to in these affidavits and thus holds that the Atlanta SDVS office's actual receipt by no later than April 3, 1992, of a copy of the Board's March 23, 1992, decision required that the veteran's NOA have been filed by August 1, 1992, long before the March 22, 1993, date on which the Court received the veteran's NOA.

Based on the foregoing, the Court holds that the defect in mailing to the veteran's representative was cured by the representative's actual receipt of the BVA decision not later than April 3, 1992; that the appellant's NOA received by the Court on March 22, 1993, was not timely filed; and that the Court thus has no jurisdiction over this appeal. *See Ashley II,* 2 Vet.App. at 311; *Ashley I,* 2 Vet.App. at 67; *cf. Davis, supra.* The Court will therefore grant the Secretary's motion to dismiss.

### III. Conclusion

On consideration of the preliminary records and the pleadings of the parties, the Court grants the appellant's motion for leave to file a reply, denies the appellant's motion to "dismiss" the Secretary's motion, and grants the Secretary's motion to dismiss. The appeal is dismissed for lack of jurisdiction due to an untimely NOA. The appellant's motion for costs and fees is denied.

**APPEAL DISMISSED; MOTION DENIED.**

IVERS, Judge, concurring in part and dissenting in part:

I concur in the result of the majority, but I respectfully disagree with the analysis taken by the majority in sections II.A.1, II.A.2, and II.A.3 and throughout the opinion regarding the applicability of 38 U.S.C. § 5104(a) and the majority's holding in section II.B.2 that the presumption of regularity of mailing to the appellant has been rebutted in this case.

The majority opinion valiantly tries to reconcile the use of the word "provide" in 38 U.S.C. § 5104(a) with the use of the word "mail" in 38 U.S.C. § 7104(e) even though there is no need for reconciliation. The Court has held that section 5104(a) requires the Board to provide notice of a claimant's appellate rights with respect to an adjudication. *See Rosler v. Derwinski,* 1 Vet.App. 241, 249 (1991). It is also true, however, that the Court has treated the section 5104(a) obligation as a separate requirement that is more applicable to agencies of original jurisdiction. For instance, in *Gilbert v. Derwinski,* 1 Vet.App. 49, 57 (1990) (emphasis added), upon having discussed the statutory requirement under section 7104(d)(1) that the Board provide reasons or bases for its decisions, the Court referred to the then-recently enacted section 5104 provision and stated: "In the future, it may well be that the Board will find it easier to fulfill this mandate [under section 7104(d)(1)] since Congress recently imposed a *similar* requirement on the Secretary when claims are denied." As the emphasized portion makes clear, the section 5104 requirement is similar but not identical to the section 7104(e) requirement.

In addition, the two statutory provisions are located in two separate chapters of title 38. Section 5104(a) is found in Chapter 51, which deals with the claims adjudication process, whereas section 7104(e) is found in Chapter 71, which deals specifically with the Board. The statutory structure supports the conclusion that the provisions in chapter 71 were crafted specially for the Board: "All questions in a matter which under section 511(a) of this title is subject to decision *by the Secretary* shall be subject to one review on appeal to the Secretary. Final decisions on such appeals shall be made *by the Board.*"

38 U.S.C. § 7104(a). The first sentence echoes the language used in section 5104(a) ("In the case of a decision by the Secretary under section 511[(a)] of this title ..."). The statutory structure thus recognizes the distinction between a decision under section 511(a) by the Secretary and a review on appeal by the Board. Consequently, section 5104(a) is not before us and section 7104(e) is clear and concise and applies to the Board.

This is not to say that the Board is not required to fulfill the duty to assist under 38 U.S.C. § 5107(a), or other provisions of title 38 that are not found within the four corners of chapter 71. Rather, Congress placed different requirements on the Board in at least one particular area—that of the mailing of notices.

The consequences of such a distinction in the wording of the organic statute of the Board are crucial. As the Court recently stated, "to mail" means something altogether different from "to furnish." *See Montalvo v. Brown,* 7 Vet.App. 312, 314 (1995). Section 7104(e) requires that the BVA *mail* its decision; therefore, the presumption of regularity involves the aspect of *mailing,* not the aspect of *delivery* or *receipt. Cf. McKentry v. Secretary of Health and Human Services,* 655 F.2d 721, 725 (6th Cir.1981) (where relevant statute provided for extension of time to file reconsideration request when good cause, such as failure of individual to *receive* notice of initial determination, existed for failure to file timely request, Court held that presumption of regularity was rebutted by lack of evidence that notice had been mailed and by appellant's introduction of evidence of nonreceipt of notice). *But see Godfrey v. U.S.,* 997 F.2d 335, 338 (7th Cir.1993) (where relevant statute required individual to "accept" refund check, government was still entitled to presumption of *delivery* where government could present either evidence of actual mailing or evidence of "present proof of procedures followed in the regular course of operations which give rise to a strong inference that the check was properly addressed and mailed."); *but cf. Meckel v. Continental Resources Co.,* 758 F.2d 811, 817 (2d Cir. 1985) (in case involving private litigants, Court rejected notion that denial of receipt

alone was sufficient to rebut presumption of mailing of notice; in addition to denial of receipt, there is required "some proof that the regular office practice was not followed or was carelessly executed so the presumption that notice was mailed becomes unreasonable"). Since the Court held in *Montalvo* that "to furnish" was synonymous with "to provide," applying the *form* of notice that is inherent in section 5104 would be directly at odds with the specific form of notice required for the Board's decisions under section 7104(e) (mailing directly via the United States Postal Service, *see Davis v. Brown*, 7 Vet.App. 298, 301–03 (1994)). Therefore, it is not necessary to read section 5104(a) "in the context" of section 7104(e). Rather, it is imperative to apply the provision of title 38 that speaks directly to the issue at hand here, i.e., section 7104(e).

In addition, I must disagree with the majority's conclusion that the presumption of regularity has been rebutted in this instance. The majority relies on the same set of facts to find that, on the one hand, the presumption of regularity was rebutted, but that, on the other hand, the Secretary met the burden of persuasion to establish that the BVA properly fulfilled its statutory requirements. That is logically inconsistent.

The majority specifically states:

Absent any evidence that the veteran took affirmative steps after filing the 1–9

> Appeal to change the address he provided on it by specifically directing VA to send all correspondence and notices to an address other than that provided on the 1–9 [A]ppeal, and absent any evidence that mailings to the 1–9 Appeal address had been returned as undeliverable, [citation omitted] the Court holds that *the BVA was entitled to rely on that address as being the veteran's "last known address" and to use it for purposes of mailing a copy of its decision.*

*Ante* at 179.

I do not disagree with the proposition that the address provided by a claimant on the VA Form 1–9 Appeal should be considered the last known address for purposes of mailing a copy of any Board decisions unless a claimant has specifically provided definitive notice of an address change in a clear and concise fashion. Indeed, the Board's own regulations dealing with the submission of additional evidence, changes in representation, or requests for a personal hearing recognize that such requests should be directed to the Board, not to the agency of original jurisdiction, at a certain point after an appeal has been certified to the Board. *See* 38 C.F.R. §§ 19.35–19.37, 20.1304 (1994).

The practice of relying on a specific document is also similar to the practice of other administrative agencies, such as in the federal taxation context, where the Internal Revenue Service (IRS) is authorized to send notice of a determination of a tax deficiency to the taxpayer's "last known address." 26 U.S.C. § 6212. Courts have interpreted the phrase as meaning "the taxpayer's last permanent address known by the Commissioner or the last known temporary address of a definite duration to which the taxpayer has directed the Commissioner to send all communications." *Gaw v. C.I.R.*, 45 F.3d 461, 465 (D.C.Cir.1995) (quoting *Marks v. Commissioner*, 947 F.2d 983, 984 (D.C.Cir.1991), but omitting internal punctuation and citation). "The taxpayer has the obligation in the first instance to give the IRS 'clear and concise notification' of an address change." *Gaw*, 45 F.3d at 465 (citations omitted); *see also Eschweiler v. United States*, 946 F.2d 45, 49 (7th Cir.1991) (if taxpayer had wanted IRS to send correspondence to particular address, "it was his obligation to give the IRS 'clear and concise' notification of this desire."). Recognizing the address provided by a claimant on the VA Form 1–9 Appeal in the absence of any subsequent clear and concise notification of an address change has the practical benefit of simplicity and reliability and places the burden squarely on the individual who is in the best position to know the correct mailing address—the claimant. Moreover, such a requirement would pose no undue formality on the claims adjudication process while better protecting the rights of claimants to notice of Board decisions.

Again, I disagree with the majority's conclusion that the presumption of regularity was rebutted. If the Board was entitled to

rely, as it should and as the majority decision holds, on the Canal Street address appearing on the VA Form 1–9, then the Board *presumptively* discharged its duties under the statute when it sent notice of the BVA decision to that address.

For the foregoing reasons, I must respectfully concur in the result, but not in the portions of the majority's analysis that I have discussed above.