Ronald R. ROSLER, Appellant,

v.

Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.

No. 90-370.

United States Court of Veterans Appeals.

Argued Oct. 18, 1990.

Decided May 17, 1991.

As Amended June 7 and Aug. 19, 1991.

Thomas F. Kilroe, Honesdale, Pa., for
appellant.

Thomas A. McLaughlin, with whom Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and Pamela L. Wood, Deputy Asst. Gen. Counsel, Washington, D.C., were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and IVERS and STEINBERG, Associate Judges.

STEINBERG, Associate Judge:

Under 38 U.S.C. § 4066(a) (1988), a claimant seeking review of a decision of the Board of Veterans' Appeals (BVA or Board) must file a Notice of Appeal (NOA) with this Court within 120 days after the date of the BVA's mailing to the claimant of notice of the BVA's decision. This case presents this Court with its first opportunity to rule on the interrelationship between the filing during this judicial appeals period of a motion for Board reconsideration and the subsequent filing of an NOA with this Court following the BVA's denial of that motion after the 120th day has passed. Although appellant raised a number of arguments based on alleged misrepresentations by the BVA, we do not reach those contentions. Rather, we hold that the claimant's filing of a reconsideration motion with the Board during the 120-day judicial appeals period postponed the start of that appeals period until the BVA mailed to the claimant notice of its denial of that motion. On the facts here, the appellant's NOA was timely filed under section 4066(a).

## I. BACKGROUND

In 1988 Mr. Rosler, a veteran with service terminating in May 1968, filed a claim seeking an increase in his service-connected disability compensation based on his contention that he was entitled to "an increased evaluation for postoperative residuals of a gastrectomy, currently rated 20 percent disabling." *Ronald R. Rosler*, loc. no. 926604, at 1 (BVA Oct. 10, 1989). The BVA issued a decision, dated October 10, 1989, denying the claim. Approximately two weeks later, on October 23, 1989, the veteran filed a motion for reconsideration

with the BVA. The Board denied the motion on March 6, 1990, well over 120 days after the mailing of notice of the BVA's October 10 decision. On May 11, 1990, the veteran filed an NOA with this Court.

This Court and the Secretary have accepted as a general rule that prior to August 31, 1990, the mailing of notice of a BVA decision is considered to have occurred on the day after the date shown on the decision as the date of decision. *See Sandine v. Derwinski*, 1 Vet.App. 26 (1990) and the Secretary's response thereto filed September 10, 1990. Thus, the date of mailing of notice of the October 10, 1989, BVA decision is considered to be October 11, 1989. Applying the *Sandine* rule to the March 6, 1990, denial of reconsideration, mailing of notice of that denial came on March 7, which was 147 days after the BVA's October 11, 1989, mailing of the notice of its October 10 decision. Hence, the veteran's May 11 NOA (filed 65 days after the March 7 mailing of notice of the March 6 denial) came 212 days after the October 11 mailing of notice, but 55 days before July 5, which was the 120th day after the March 7 mailing of denial of reconsideration. (If the 134 days during which the reconsideration motion was pending before the Board are not counted, the NOA was filed here on the 78th day after the mailing of the notice of the initial BVA decision.)

On July 6, 1990, the Secretary moved to dismiss, to stay further proceedings here, and to set aside the Court's previous order of June 6, 1990, directing the Department of Veterans Affairs (VA) to designate the record on appeal. VA argued that the veteran was precluded from appealing to the Court because his NOA was not filed within the statutorily mandated 120-day appeal period. On July 30, 1990, the appellant responded that the Court had jurisdiction over his appeal based on a variety of alternative theories.

The appellant first contends that he had until July 5, 1990, to file an NOA here. He supports this position on the basis of the BVA's advice to him in its letters transmitting the initial BVA decision and its later

decision to deny his motion for reconsideration. The appellant notes the following statements in the BVA October 10, 1989, letter transmitting its initial decision:

> If you believe there is obvious error of fact or law in the BVA decision, you *may* file a motion requesting reconsideration by the BVA....
>
> ....
>
> You may have the right to appeal this BVA decision to a court. A final decision of the BVA, which follows a Notice of Disagreement filed on or after November 18, 1988, may be appealed to the United States Court of Veterans Appeals.... A notice of appeal must be filed with the [Court] within 120 days from the date of mailing of notice of the BVA decision. The date of mailing is the date which appears on the face of the decision....

Memorandum in Support of Appellant's Answer to Motion to Dismiss, Attachment (emphasis added). The appellant maintains that since this letter informed him, first, that he had a right to apply to the Board for reconsideration and, second, that "upon final decision he would have the right to file [a] notice of appeal" with this Court, he concluded that the March 6, 1990, BVA denial of reconsideration was the final decision from which he appealed and that, hence, a new 120–day period was started on the date of mailing of notice of that decision. Memorandum of Appellant at 2. Accordingly, he contends, he also concluded that since he had until July 5, 1990, to file with this Court, his May 11, 1990, NOA was timely filed.

The appellant further points out that the BVA's March 6, 1990, denial of reconsideration was accompanied by a BVA letter which did not inform him of the position the Secretary here argues—that if he filed a motion for reconsideration the 120–day appeal period would continue to run and thus that the 120 days for appeal of the October 10 decision had already expired. The letter advised him: "There is another option available to you. If less than 120 days have passed from the date of the BVA decision, you have the right to appeal the Board's denial of your appeal to the United

States Court of Veterans Appeals." Motion and Memorandum of Appellee, Exhibit 2. The BVA letter did not mention which "denial" and made no reference to the fact that 146 days had already expired from the date on which notice of the BVA decision had been mailed. The appellant contends that he again justifiably felt that the reference to "denial" was, therefore, "obviously a reference to the denial of the petition to reconsider." Answer of Appellant at 2. Otherwise, he points out, there would have been no reason for the March 6, 1990, letter to have raised the possibility that 120 days might not yet have passed since the mailing of notice of the October 10, 1989, decision.

The appellant further contends that the very fact of the BVA's 134–day delay in deciding his request for reconsideration (26 days beyond the date the Secretary now asserts was the deadline for the appellant to file an NOA with this Court) was either an attempt to deny him his right of appeal or an implicit acknowledgment that, as set forth above, the time to appeal began to run anew when reconsideration was denied. Memorandum of Appellant at 2-3. He points out that, although he had filed his request for reconsideration within two weeks after the BVA decision, the BVA's delay in sending its letter of denial until after the 120 days had elapsed would have eliminated his opportunity to appeal if the Secretary's position is sustained.

These contentions by the appellant apparently rest on equitable estoppel. He asserts that since he relied upon VA's advice VA should not be allowed to "thwart [his] legitimate claim and rights". *Id.* at 4. This argument seems to be an assertion that the U.S. Government is estopped from making the motion to dismiss here because once the Government gives misleading advice to a benefits claimant and the claimant relies upon the advice to his detriment, the government "should not be allowed to use those tactics [to deny benefits]." *Ibid.* In support of this apparent estoppel argument, he points out that the BVA letters "did not advise the veteran that he must [as the Secretary contends here] choose one

of the options (review [BVA reconsideration] or [judicial] appeal) to the exclusion of the other." Answer of Appellant at 2.

Alternatively, the appellant argues that, in effect, his filing the motion for reconsideration, 12 days after notice of the October 10, 1989, BVA decision was mailed, tolled—that is, suspended—the running of the 120–day–NOA–filing clock and that, therefore, his appeal was filed "only 79 [78 in light of the *Sandine* discussion, *supra* ] days after [mailing of notice of] the final decision." *Id.* at 3. Under this argument, the appellant would have had until June 22, 1990, to file his NOA.

The Secretary states in his motion for dismissal of the appeal: "It is plain from the explicit language in section 4066 that Congress chose to bar access to the Court for individuals who neglect to file a notice of appeal within 120 days after the date on which the BVA decision is mailed." Memorandum of Appellee at 2. The Secretary contends that where Congress' intent is "expressed with such clarity, the command of the statute must be honored even in the face of seeming injustice." *Ibid.*

## II. ANALYSIS

### A.

We begin our inquiry with the statutory language of 38 U.S.C. §§ 4066(a) and 4003(a) and (b) (1988). Section 4066(a) states: "In order to obtain review by the Court of Veterans Appeals of a *final* decision of the Board ... a person adversely affected by that action must file a notice of appeal with the Court ... within 120 days after the date on which notice of the decision is mailed...." (Emphasis added.) In pertinent part, 38 U.S.C. § 4003(a) (1988) provides that a "decision of [a] section [of the Board] is *final* unless the Chairman orders reconsideration of the case." (Emphasis added.) Section 4003(b) then states in pertinent part: "If the Chairman orders reconsideration in a case, the case shall upon reconsideration be heard by an expanded section of the Board."

The statute contains no deadline for the filing of a motion for reconsideration with the BVA Chairman nor any limitation on the number of such motions that may be filed by an appellant as to a claim. VA regulations permit a claimant to file such a motion for reconsideration "at any time". 38 C.F.R. §§ 19.185–87 (1990). VA regulations specify three grounds—obvious error of fact or law, certain new and material evidence, and false or fraudulent evidence—for the BVA to grant reconsideration. 38 C.F.R. § 19.185 (1990). A proposed VA regulation would continue these three grounds essentially unchanged. 54 Fed.Reg. 34,360 (1989) (to be codified at 38 C.F.R. § 20.1000) (proposed Aug. 18, 1989).

Prior to the enactment of the Veterans' Judicial Review Act (VJRA), Division A of Pub.L. No. 100–687, 102 Stat. 4105 (1988), the statute did not mention "reconsideration". The VJRA introduced that term by providing in section 4003(a) and (b) of title 38, U.S.Code, specifically for "reconsideration" when ordered by the BVA Chairman, as quoted above. VJRA, Pub.L. No. 100–687, § 202, 102 Stat. at 4110.

### B.

In *ICC v. Brotherhood of Locomotive Engineers,* 482 U.S. 270, 284, 107 S.Ct. 2360, 2368, 96 L.Ed.2d 222 (1987), the Supreme Court held that a "timely petition for administrative reconsideration stay[s] the running of the Hobbs Act's limitation period [for filing a petition for review with a court of appeals] until the [reconsideration] petition ha[s] been acted upon by the [Interstate Commerce] Commission." *See also Winter v. ICC,* 851 F.2d 1056 (8th Cir.1988), *cert. denied,* 488 U.S. 925, 109 S.Ct. 308, 102 L.Ed.2d 327 (1988) (timely petition for reconsideration tolls period for judicial review of original administrative order); *West Penn Power Co. v. EPA,* 860 F.2d 581, 585 (3d Cir.1988) (dictum to the same effect); *Cities of Newark, New Castle and Seaford, Delaware v. FERC,* 763 F.2d 533, 535, 540–45 (3d Cir.1985) (60–day period for filing petition for review in court of appeals is "tolled" by municipalities motion for rehearing of issue addressed in earlier order on first rehearing).

We find the above *Locomotive Engineers* holding dispositive of the outcome of our case since the statutory provisions un-

der consideration in *Locomotive Engineers* are substantively indistinguishable from those applicable to the instant case: namely, 38 U.S.C. § 4066 (1988), which provides that "a person adversely affected by [a BVA final decision] must file a notice of appeal with the Court ... within 120 days"; 38 U.S.C. § 4003(a) and (b) (1988) which provides for BVA reconsideration of a BVA decision at the discretion of the BVA Chairman; and VA regulations which expressly permit a motion for such reconsideration "at any time", 38 C.F.R. §§ 19.185–86 (1990). (Proposed VA regulations would make no change in the open-ended nature of reconsideration. 54 Fed.Reg. 34,360–61 (1989) (to be codified at 38 C.F.R. §§ 20.-1000–01) (proposed Aug. 18, 1989).)

The version of the Hobbs Act in effect at the time of the *Locomotive Engineers* decision, 28 U.S.C. §§ 2341–53 (1982), provided that any "party aggrieved by the final [administrative] order may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies". 28 U.S.C. § 2344 (1982). Also comparable to the applicable title 38 provision was the subsection of the Revised Interstate Commerce Act that provided that the Interstate Commerce Commission (ICC) *"may, at any time* on its own initiative [or the petition of an interested party] because of material error, new evidence, or substantially changed circumstances ... reopen a proceeding [or] grant rehearing, reargument, or reconsideration". 49 U.S.C. § 10327(g)(1) (1982) (emphasis added). *See also* 49 C.F.R. § 1115.4 (1986) ("person at any time may file a petition to reopen any administratively final action of the Commission"); *but cf.* 49 C.F.R. § 1115.3(e) (1986) (seeming to restrict period for filing petition for reconsideration when grounds are essentially the same as could be used for petition for reopening).

Thus, the ICC appeal-limitation-period and reconsideration provisions involved in *Locomotive Engineers* are not substantively distinguishable from the comparable title 38 provisions.

It is implicit in the tolling principle that the motion for reconsideration must be made within the time period for filing a judicial appeal from the decision which is the subject of the reconsideration motion. Otherwise, the appeal period would already have elapsed and thus could not be tolled. *See Bolling v. Director, Office of Workers' Comp. Programs,* 823 F.2d 165 (6th Cir. 1987) (untimely motion to reconsider does not toll the appellate review period); *cf. Locomotive Engineers,* 482 U.S. at 279, 107 S.Ct. at 2366.

▪ At least since the 1987 decision in *Locomotive Engineers,* it seems clearly established that where a party elects to pursue reconsideration or rehearing before an administrative agency that party may not thereafter pursue judicial review until the administrative agency disposes of the motion for reconsideration or rehearing—or until the party withdraws the petition. *See ICG Concerned Workers Assoc. v. United States,* 888 F.2d 1455, 1458 (D.C.Cir.1989); *Chu v. I.N.S.,* 875 F.2d 777, 780–81 (9th Cir.1989); *United Transp. Union v. I.C.C.,* 871 F.2d 1114, 1118 (D.C.Cir.1989); *West Penn,* 860 F.2d at 86–87; and *Winter,* 851 F.2d at 1062. After a proceeding is reconsidered, for whatever reason, and the administrative agency issues a new and final order—even if that order merely reaffirms the rights and obligations set forth in the original order—that order is itself reviewable in court on its merits. *See United States v. Seatrain Lines,* 329 U.S. 424, 432, 67 S.Ct. 435, 439, 91 L.Ed. 396 (1947); *Locomotive Engineers,* 482 U.S. at 278, 107 S.Ct. at 2365 (dictum).

To establish, as the Secretary urges, a requirement that, in order to preserve the right of appeal to this Court, a claimant, before seeking BVA reconsideration, *must,* within 120 days after the mailing of the BVA decision, *both* file an appeal in this Court *and* then request reconsideration by the BVA would create an onerous burden. *See Locomotive Engineers,* 482 U.S. at 284–85, 107 S.Ct. at 2368–69; *West Penn,* 860 F.2d at 585. Since so many of our appellants are *pro se,* notification to them of the need for such a "protective" appeal would, as Judge Becker pointed out in *West Penn,* pose a substantial administrative

problem and, consequently, many such claimants would not receive such notice and would thereby lose their right to judicial review. 860 F.2d at 585. *See also Bolling*, 823 F.2d at 165; *Outland v. C.A.B.*, 284 F.2d 224, 228 (D.C.Cir.1960).

The Secretary has placed reliance upon *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). *See* Supplemental Memorandum of Appellee at 7. There, the Supreme Court rejected a tolling theory urged by the claimant where she was not given misleading information by the Government and the tolling she sought would have taken place while waiting for her to file the complaint—that is, the length of the tolling period would have been entirely under the claimant's control. In contrast, in our case, the Government provided the appellant with arguably misleading information, the tolling occurred while the appellant awaited governmental action over which he had no control, and the timing of that action would, if the Secretary's view prevailed, totally exhaust the judicial appeal period. In any case, *Locomotive Engineers* was decided three years later and is controlling under the circumstances in our case.

As noted earlier, the appellant raised alternative theories in addition to a tolling theory. Our acceptance of the tolling analysis makes it unnecessary for us to decide those alternative arguments, including the equitable estoppel claim.

### C.

Having established the applicability of the tolling principle established authoritatively in *Locomotive Engineers*, we turn to the task of determining exactly what "tolling" entails. According to Black's Law Dictionary (6th ed. 1990), the verb "toll" means:

> **Toll, v.** To bar, defeat, or take away; thus, to toll the entry means to deny or take away the right of entry.
>
> To suspend or stop temporarily as the statute of limitations is tolled during the defendant's absence from the jurisdiction and during the plaintiff's minority.

Although similar, the two definitions are subtly different. Under the first definition—"defeat" or "take away"—the period in question would be taken away or erased by the action which triggered the tolling, here the filing of the motion for reconsideration. Hence, an entire new 120–day period would be initiated when the tolling triggering action is itself abated, which occurs when that motion is denied by the Board. Under the second definition—"suspend"—the period in question is held in abeyance by, and during consideration of, the reconsideration motion and resumes upon the elimination of the tolling trigger. Applying either tolling concept to the facts of our case results in the May 11 NOA being rendered timely under 38 U.S.C. § 4066(a). Under the first definition of tolling, the appellant would have had until July 5, 120 days after the March 7 presumed mailing of the March 6 denial of reconsideration by the Board (by analogy to section 4066(a), we hold that, under the first definition, the beginning of the 120–day judicial appeal period as to the October 10, 1989, BVA decision would occur on "the date on which notice of the decision [denying reconsideration] is mailed" to the claimant, 38 U.S.C. § 4066(a) (1988)). Under the second definition of tolling, the appellant would have had 108 more days after March 7, or until June 23, to file his NOA.

Although it is not necessary to the disposition of this case to choose between the two definitions, we do so because of the importance of providing notice to future appellants, the Board, and VA of the precise rule we adopt. For the reasons set forth below, we hold that the first definition is the one intended by the Supreme Court in *Locomotive Engineers* and is the one that will be applicable to the jurisdiction of this Court under section 4066(a).

In *Locomotive Engineers*, the Court explained its holding by stating that "petitions for reconsideration ... [render] the orders under reconsideration nonfinal." *Locomotive Engineers*, 482 U.S. at 285, 107 S.Ct. at 2369. That reasoning was specifically followed in *United Transp. Union*, 871 F.2d at 1116 ("pending petition

for rehearing must render the underlying agency action nonfinal"); *West Penn,* 860 F.2d at 583 ("pendency of the reconsideration petition deprives the agency decision of finality"); and *Winter,* 851 F.2d at 1062 ("once ... petitions to reopen [were filed], the original [agency decision] became nonfinal"). The case cited by the Court as the principal holding for the doctrine of nonfinality was the 1960 D.C. Circuit decision in *Outland v. C.A.B.,* 284 F.2d at 227–28.

In *Locomotive Engineers,* the Supreme Court stated the tolling doctrine twice, as follows: "the timely petition for administrative reconsideration *stayed the running* of the Hobbs Act's [60–day] limitation *period* until the petition had been acted upon by the Commission ...", 482 U.S. at 284, 107 S.Ct. at 2368; and "the petition [for reconsideration] *tolls the period for judicial review of the original order,* which can thereafter be appealed to the courts *directly* after the petition for reconsideration is denied." *Id.* at 279, 107 S.Ct. at 2366 (bold face emphasis added). Nowhere does the Court provide any specificity as to how the tolling rule is to be applied. We think that either the "defeats/erases" or the "suspends" approach is consistent with the Court's language as to what happens to "the running of the ... period" or to "the period for judicial review".

Nor do the principal cases which have followed *Locomotive Engineers* answer the question. In *West Penn,* Judge Becker characterized the tolling rule adopted by *Locomotive Engineers* as follows: "the filing of a petition for reconsideration stays the running of the limitations period, because the filing of the petition renders the prior decision 'nonfinal'." *West Penn,* 860 F.2d 581, 584 (dictum citing *Outland* and *Newark*). *See also West Penn,* 860 F.2d at 585 (characterizing *Locomotive Engineers* as explaining that "if the running of the limitations period were not stayed, litigants petitioning for reconsideration would be required to file 'protective appeals' "). In *United Transp. Union,* 871 F.2d at 1117, the D.C. Circuit quotes the above language of the *Locomotive Engineers* holding.

However, three lines of inquiry and analysis all point to the first definition: (1) the underlying facts in *Locomotive Engineers;* (2) the cases preceding the Supreme Court's decision; and (3) an analogous line of cases involving the effect of a petition for rehearing in a lower appellate court on the 90–day period for filing a petition for certiorari with the Supreme Court.

The dates that the operative petitions were filed in *Locomotive Engineers* show that the Court could not have been applying a "suspends" concept of tolling since a total of more than the 60 days provided for in the Hobbs Act was consumed when the 13–day period between the May 18, 1983, order for which review was sought and the May 31, 1983, petition for reconsideration is added to the 52–day period between the October 25, 1983, denial of the petition for reconsideration and the December 16, 1983, petition for judicial review. (Although the May 31, 1983, date of the petition for reopening is not mentioned in the Supreme Court's opinion, it is stated by the court of appeals in its opinion below. *Brotherhood of Locomotive Engineers v. ICC,* 761 F.2d 714, 719 (D.C.Cir.1985).)

Although the Supreme Court in *Locomotive Engineers* did not cite any direct authority for the tolling doctrine it applied to the facts before it, as noted above it did cite the 1960 D.C. Circuit case of *Outland* as the only holding for the principle that underlies the tolling doctrine: that "petitions for reconsideration ... [render] the orders under reconsideration nonfinal." 482 U.S. at 285, 107 S.Ct. at 2369. *Outland* was called by Third Circuit Judge Becker (who also wrote the 1988 *West Penn* post-*Locomotive Engineers* decision) "the progenitor" of the line of cases establishing the tolling rule. *Newark,* 763 F.2d at 544 n. 18. In *Outland,* then Circuit Judge Burger specifically held:

Practical considerations, therefore, dictate that when a petition for rehearing is filed [with the administrative agency], review [in the court of appeals] may properly be deferred until this has been acted upon.... We hold that *when a motion for rehearing is made, the time for filing a petition for judicial review*

*does not begin to run until the motion for rehearing is acted upon by the Board.*

*Outland,* 284 F.2d at 227–28 (emphasis added). Not only does this language make clear that a second full period for seeking judicial review is created when a reconsideration petition is denied by the administrative agency, but the opinion does not find it necessary to give the date of the Board order being appealed or the date on which the petition for rehearing was filed with the Board. The opinion does reveal that 56 days out of the 60–day judicial review period had elapsed between the Board's denial of the petition for rehearing and the filing of the petition for judicial review. We believe it can safely be assumed that more than four days had passed from the Board's original order by the time the petition for rehearing on it was filed.

Also persuasive as to this interpretation of *Outland* is Judge Becker's analysis in *Newark* which held that the Federal Power Act required "that the time limit for an appeal will be tolled when a timely petition for reconsideration is before the FERC." *West Penn,* 860 F.2d at 585 (characterizing the *Newark* holding). In *Newark,* which spoke four times of tolling "the period for seeking [judicial] review", 763 F.2d at 535, 544–45, and, as noted earlier, credited *Outland* with the origination of the so-called "tolling rule", the court noted that the rule being applied is analogous to Federal Rule of Appellate Procedure 4(a)(4) which "in the ordinary civil litigation context … provides that the 30–day period for taking an appeal will be suspended by the filing of various types of motions in the district court [and started anew after those motions are resolved]." *Newark,* 763 F.2d at 544. That Judge Becker was using tolling in the first definitional sense is also strongly indicated by the underlying facts. The petition for judicial review was filed by the municipalities on the 57th day of the 60–day appeal period that began with the date of the Board's denial of rehearing, and, the court did not, as in *Outland,* find it necessary to state the date of the filing of the petition for rehearing.

A third basis for our conclusion that the first definition of tolling is applicable derives from an analogous line of Supreme Court cases holding that a timely petition for rehearing filed in a lower appellate court tolls the start of the 90–day limitations period for filing a petition for certiorari with the Supreme Court. *See Dept. of Banking v. Pink,* 317 U.S. 264, 266, 63 S.Ct. 233, 234, 87 L.Ed. 254 (1942); *Browder v. Director, Dept. of Corrections of Ill.,* 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978); *Missouri v. Jenkins,* 495 U.S. 33, 110 S.Ct. 1651, 1660, 109 L.Ed.2d 31 (1990). Although *Pink* and *Browder* had characterized their holdings as being that a "timely petition for rehearing tolls the running of the [appeal] period because it operates to suspend the finality of the [lower] court's judgment", *Jenkins* restated the holding as being that "petitions for rehearing timely presented to the Courts of Appeals … [toll] *the start* of the period in which a petition for certiorari must be sought until rehearing is denied or a new judgment is entered on the rehearing." *Jenkins,* 110 S.Ct. at 1660 (emphasis added). The Court stated: "This practice is now reflected in this Court's Rule 13.4: '[I]f a petition for rehearing is timely filed in the lower court by any party in the case, the time for filing the petition for a writ of certiorari … *runs from the date of the denial of the petition* for rehearing or the entry of a subsequent judgment.'" 110 S.Ct. at 1660 n. 13 (emphasis added). Two months prior to *Jenkins,* the D.C. Circuit had several times characterized the *Pink* doctrine in the same terms as did the Supreme Court in *Jenkins. See Clarke v. United States,* 898 F.2d 162, 164–65 (D.C.Cir.1990).

Although the *Pink-to-Jenkins* line of certiorari tolling cases and the *Outland*-to-*Locomotive Engineers* judicial-review tolling line never converge (do not cite one another), we believe that the former line reinforces our interpretation of the meaning of tolling as used in the latter, since we can surmise no tenable basis for using different concepts of tolling in the two analogous lines of tolling cases.

**Page 249**

The foregoing three analyses demonstrate to our complete satisfaction that the tolling doctrine set forth in *Locomotive Engineers* means that although the judicial review period begins to run, as to a final administrative agency decision, on the date on which that decision is final, its finality is defeated and that judicial appeal period is erased when a timely motion for administrative reconsideration is filed within the judicial appeal period and a new, full judicial appeal period as to the underlying agency decision is triggered when the agency denies the reconsideration motion.

Finally, we note that, with respect to adjudications made after January 31, 1990, the Secretary of Veterans Affairs is required by law to advise VA claimants throughout the claims adjudication process of their subsequent appellate rights as to those adjudications. *See* Veterans' Benefits Amendments of 1989, Pub.L. No. 101–237, § 115(a), (b), 103 Stat. 2062, 2065–66 (1989); 38 U.S.C. § 3004(a) (Supp.I 1990) (requiring the Secretary to include with notice of VA adjudication decisions "an explanation of the procedure for obtaining review of the decision"). Thus, unless a protective NOA has been filed in this Court, the BVA will be required, under section 3004(a), when it denies a motion for reconsideration to advise the claimant of the new 120–day judicial appeal period that commences, as to the underlying substantive BVA decision, on the date of the mailing of the BVA's notice of denial of the motion for reconsideration. In determining whether the initial reconsideration motion was filed within the 120–day judicial appeal period, the BVA, in essence, will need to treat the motion as if it were an NOA filed with this Court and apply our decisions in determining the length of the judicial appeal period and the application of 38 U.S.C. § 4066(a) to the facts of the particular case. *See, e.g., Sandine* and Secretary's response, described *supra* at 27; *Chadwick v. Derwinski*, 1 Vet.App. 74 (1990); *Elsevier v. Derwinski*, 1 Vet.App. 150 (1991); *Pawvluk v. Derwinski*, 1 Vet.App. 385 (order dismissing case, Mar. 29, 1991).

## III. CONCLUSION

We hold that, if following an initial final BVA decision the claimant, as did Rosler—before filing an NOA with this Court—files a motion for reconsideration with the BVA during the 120–day judicial appeal period, the finality of the initial BVA decision is abated by that motion for reconsideration. *See Locomotive Engineers*, 482 U.S. at 280, 107 S.Ct. at 2366; *Jenkins*, 110 S.Ct. at 1660. A new 120–day period begins to run on the date on which the BVA mails to the claimant notice of its denial of the motion to reconsider, or, if the claimant withdraws the request for reconsideration (*see West Penn*, 860 F.2d at 588), on the date on which the BVA receives a notification from the claimant of the withdrawal. If the BVA grants the motion for reconsideration, the 120–day appeal period as to that reconsidered BVA decision commences on the date that notice of the decision of an expanded section of the BVA is mailed to the claimant. *See id.* at 284–85, 107 S.Ct. at 2368–69.

Hence, Rosler would have had until July 5, 1990, to file a timely NOA regarding the original BVA decision. His May 11, 1990, NOA was thus timely filed.

We are mindful that the rule we announce today might, in the words of Judge Becker in *Newark*, permit a claimant to "frustrate" the judicial review period by filing "dilatory, repetitive" motions for reconsideration. *Newark*, 763 F.2d at 542–43. This case is not presently before us and can be dealt with by the Court should such a case arise and should the Court find that the application of the tolling rule would frustrate judicial review. Alternatively, as the court noted in *Newark*, if the administrative agency is concerned about such a prospect, it can address it by regulation. *Ibid.*

We note that a VA claimant adversely affected by a BVA decision continues to have the option of filing a protective NOA here (*see Wrather–Alvarez Broadcasting, Inc. v. FCC*, 248 F.2d 646, 649, (D.C.Cir.

1987) and then following the procedure outlined in *Cerullo v. Derwinski*, 1 Vet.App. 195, 200–01 (1991)), in order to obtain reconsideration at the BVA. Although such a protective appeal is not mandatory under our statutory scheme, it certainly is permissible and could be of value to a claimant who decided to abandon his or her reconsideration motion in order to seek relief here. The protective NOA would preclude the BVA from initiating reconsideration on its own without the permission of this Court. *See Cerullo*, at 198–99.

For the reasons discussed above, the Secretary's motion to dismiss is DENIED and the Secretary is ordered to designate the record on appeal within 30 days after the date of this opinion.

*It is so Ordered.*