**Ofelia O. WARFIELD, Appellant,**

v.

**Hershel W. GOBER, Acting Secretary of Veterans Affairs, Appellee.**

**No. 96–693.**

United States Court of Veterans Appeals.

Nov. 5, 1997.

Sean Kendall, Boulder, CO, was on the brief for appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; Carolyn F. Washington, Acting Deputy Assistant General Counsel; and Michael R. Smalls,Washington, DC, were on the brief for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and IVERS, Judges.

IVERS, Judge:

The appellant appeals from a May 29, 1996, Board of Veterans' Appeals (BVA or Board) decision which denied an effective date prior to August 1, 1990, for dependency and indemnity compensation (DIC) benefits. The question presented, whether a letter in-forming the appellant of her right to apply for DIC benefits and an application were sent on or about February 22, 1989, requires this Court to determine whether the pre-sumption of administrative regularity has been rebutted. For the reasons stated below the Court will affirm the BVA's May 29, 1996, decision.

## I. FACTS

The veteran, the appellant's late husband, served on active duty from February 1935 to December 1937 and from April 1944 to Octo-ber 1945. Record (R.) at 15, 127. The veter-an was discharged on October 13, 1945, due to an inability to perform his duties because of chronic asthma. R. at 26. He was grant-ed service connection for chronic bronchial asthma, effective October 14, 1945. R. at 32. The veteran died on January 4, 1989. The immediate cause of death was listed as car-diopulmonary arrest due to chronic obstruc-tive pulmonary disease. R. at 68.

On February 15, 1989, the regional office (RO) received an application for burial bene-fits. R. at 70–71. On February 22, 1989, the RO completed a Benefits Delivery Network Target 209 screen for the purpose of gener-ating and sending a letter, along with an application for DIC or death pension to the appellant. R. at 73; see also R. at 185. In March 1989 VA authorized payment for buri-al expenses. R. at 78. In May 1989 the appellant submitted an application for a U.S. flag for burial purposes. R. at 75–76.

On July 24, 1990, the appellant applied for loan guaranty benefits. R. at 82. In August 1990 VA sent the appellant an application for DIC benefits. R. at 134. In September 1990 the RO advised the appellant to send information regarding the clinics where the veteran had received treatment for his ser-vice-connected respiratory disease. R. at 84.

A January 18, 1991, rating decision in-formed the appellant that she was eligible for Chapter 35 benefits because the veteran's death was service connected. R. at 86. On January 30, 1991, the RO issued a letter to the appellant authorizing an additional $1100.00 in burial benefits, to include an ad-ditional allowance payable because the veter-

an's death resulted from a service-connected condition. R. at 88.

In May 1991 the appellant submitted an application for DIC. R. at 93–96. In August 1991 the RO awarded DIC benefits effective June 1, 1991, based upon the receipt of her application in May 1991. R. at 125; *see also* R. at 129.

The appellant submitted a Notice of Disagreement contending that the effective date should have been January 1989 when she filed for burial benefits, instead of May 1991. She asserted that the application for burial benefits should have been considered an informal claim for DIC. R. at 138. A Statement of the Case (SOC) was issued which noted that applications for DIC had been sent to the appellant on February 23, 1989, and August 7, 1990. R. at 140–43.

In December 1991 the appellant submitted a statement. Attached to this was a summary of correspondence with VA, including: (1) February 21, 1989, and August 6, 1990, letters from VA stating, "This is to let you know that we have received your application for benefits."(R. at 133–34); and (2) an August 8, 1990, letter from VA stating,

> We are sincerely sorry to learn of the veteran's death. We realize this is a difficult adjustment period for the veteran's family and wish to offer assistance to the widow, children and parents in applying for benefits to which they may be entitled. The benefits are explained in the enclosed application form, which when completed and returned to us will be given prompt and careful consideration. It is important that the completed application be returned within 1 year of the date of the Veteran's death.

R. at 134.

In February 1992 the RO informed the appellant that an effective date of August 1, 1990, had been granted "based upon your claim for service connected death benefits through Loan Guaranty benefits claim filed on 07–25–90." The letter continued, "We sent you an application . . . for [DIC] on 02–23–89, shortly after the death of the veteran. You had one year from the date of death or date of our notice to file your claim." R. at 144. She submitted a Substantive Appeal. R. at 158–61.

On January 19, 1995, the BVA remanded the appellant's claim for further adjudication. Specifically, the RO was to determine whether the appellant had been sent an application for DIC benefits in February 1989. R. at 172.

A Supplemental SOC was issued which noted that a DIC application was sent to the claimant in February 1989 as "evidenced by a computer 'half sheet' dated the same date and filed in the veteran's claim folder." R. at 177. The appellant submitted a Substantive Appeal. R. at 179–80.

In a December 1995 VA memorandum, pertinent sections of the VA ADJUDICATION PROCEDURE MANUAL, M21–1, Part V, Chapter 23 [hereinafter MANUAL M21–1] were addressed and submitted. The memorandum contained the following explanation:

> According to the letter generation process outlined in Chapter 23, a development letter would have issued in the normal course of business during the evening of February 22, 1989 following on-line and end-of-day computer processing (M21–1, Part V, 23.03). The only actions which could stop the routine processing of this letter would be:
>
> a. The suppression of the letter by the operator;
>
> b. An award authorized on the same day (Section 23.02b(2)); or,
>
> c. The issue was canceled (PCAN) or cleared (PCLR) on the same day (Section 23.02b(4)).

R. at 185. It was noted that the evidence of record failed to show that the letter was suppressed, that an award was issued that day, or that the issue was canceled or cleared on the same day. *Id.*

On May 29, 1996, the BVA rendered the decision currently on appeal. The Board found that an effective date for the assignment of DIC benefits earlier than August 1, 1990, was not warranted. R. at 8.

## II. ANALYSIS

The appellant contends that she has rebutted any presumption of regularity with respect to whether information regarding how to apply for DIC benefits was prop-

erly mailed to her in February 1989 as VA contends. Appellant's Brief (Br.) at 5–8. "Principles of administrative regularity dictate a presumption that government officials 'have properly discharged their official duties.'" *Saylock v. Derwinski*, 3 Vet.App. 394, 395 (1992); *Ashley v. Derwinski*, 2 Vet. App. 307, 308–09 (1992) (quoting *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926)). However, the presumption of regularity is not absolute and may be rebutted by the submission of "clear evidence to the contrary." *Rosler v. Derwinski*, 1 Vet.App. 241, 242 (1991). When the appellant submits clear evidence to the effect that VA's "regular" mailing practices are not followed or are not regular, the Secretary is no longer entitled to the benefit of the presumption. The burden then shifts to the Secretary to show that the document was mailed to the appellant. *Id; see United States v. Roses, Inc.*, 706 F.2d 1563, 1567 (Fed.Cir.1983) ("The presumption [of official regularity may also] operate[] in reverse. If [mailing] appears irregular, it is irregular, and the burden shifts to the proponent to show the contrary."). The MANUAL M21–1, Part V, § 23.08(a) provides that all letters that are generated to the claimant from data on the claims development screens are printed two or three times. A copy goes to the claimant, the RO, and, if designated, the service organization.

■ The appellant argues that there is clear evidence to rebut the presumption of regularity. Specifically, her assertion that she had never received the DIC application allegedly sent in February 1989 and that a copy of the cover letter which is to accompany the application is missing from the file. "Evidence of nonreceipt by either the veteran or the veteran's representative, standing alone, is not the type of clear evidence to the contrary which would be sufficient to rebut the presumption of regularity." *Ashley*, 2 Vet.App. at 309. Finally, the argument that a computer would have generated a letter absent the three conditions discussed above is troubling. Computers, like the people who operate them, are not perfect and can fail to produce the work that is required of them. Furthermore, there is no explanation for an August 1990 letter that *was* included in the file and which appears to indicate that VA

considered the veteran's death a recent occurrence. While these points raise interesting questions, they do not rise to the level of "clear evidence to the contrary." Therefore, the appellant has not presented clear evidence to the contrary to indicate that she did not receive the February 1989 DIC application.

### III. CONCLUSION

For the reasons stated above, the BVA's May 29, 1996, decision is AFFIRMED.