**Richard A. LINVILLE, Appellant,**

v.

**Togo D. WEST, Jr., Acting Secretary of Veterans Affairs, Appellee.**

No. 97–66.

United States Court of Veterans Appeals.

Feb. 3, 1998.

Michael P. Horan and Karen B. Levin were on the pleadings for appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; Thomas A. McLaughlin, Special Assistant to the Assistant General Counsel; and Susan A. Wuchinich, Washington, DC, were on the pleadings for appellee.

Before NEBEKER, Chief Judge, and KRAMER, FARLEY, HOLDAWAY, IVERS, STEINBERG, and GREENE, Judges.

NEBEKER, Chief Judge, filed the opinion of the Court. KRAMER, Judge, filed a dissenting opinion in which STEINBERG, Judge, joined. STEINBERG, Judge, filed a dissenting opinion.

NEBEKER, Chief Judge:

The appellant, Richard Linville, appeals from a February 28, 1996, decision of the Board of Veterans' Appeals (Board or BVA) which denied an increased evaluation for post-traumatic stress disorder, and from

a September 12, 1996, decision of the Deputy Vice Chairman of the BVA which denied reconsideration of the February 28, 1996, BVA decision. The Secretary has moved to dismiss. A disagreement between panels of the Court on the question at issue in this case and in the case of *Bethel v. West*, U.S. Vet.App. No. 96–1738 (Notice of Appeal filed Dec. 23, 1996), gives rise to this en banc decision. The question now presented is whether the motion for reconsideration, filed more than 120 days after the BVA decision but postmarked within the 120-day period, can serve to confer jurisdiction on this Court. We hold that it cannot, and accordingly dismiss the appellant's appeal for lack of jurisdiction.

The underlying Board decision was dated February 28, 1996. On July 19, 1996, the Board stamped the appellant's motion for reconsideration as received. At that time, it was 142 days after the date the BVA decision was mailed, however, the envelope was postmarked "June 19, 1996," or 112 days after the BVA decision was mailed. On September 12, 1996, the Deputy Vice Chairman of the Board denied the appellant's motion for reconsideration. On January 10, 1997, the appellant filed a Notice of Appeal (NOA) from the decision of the Board, and from the decision of the Deputy Vice Chairman of the Board which denied reconsideration. January 10, 1997, was less than 120 days after the Deputy Vice Chairman's denial of reconsideration.

The Secretary moved to dismiss, asserting that the appellant had filed an untimely NOA. The appellant filed a response to the Secretary's motion, arguing that his NOA was timely because he mailed his motion for reconsideration to the Board on June 19, 1996, 112 days after the BVA mailed notice of its decision.

■■■ This Court's appellate jurisdiction derives exclusively from the statutory grant of authority provided by Congress, and the Court may not extend its jurisdiction beyond that permitted by law. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818, 108 S.Ct. 2166, 2178–79, 100 L.Ed.2d 811 (1988); *see also Prenzler v. Derwinski*, 928 F.2d 392 (Fed.Cir.1991); *Skinner v. Derwin-*

*ski*, 1 Vet.App. 2 (1990). To be timely filed under Rule 4 of this Court's Rules of Practice and Procedure and precedents construing 38 U.S.C. § 7266(a), an NOA must be received by the Court, or postmarked within 120 days after the BVA decision is mailed to an appellant. *See Butler v. Derwinski*, 960 F.2d 139 (Fed.Cir.1992). This Court may not review denials of reconsideration by the BVA Chairman in cases where it does not already have jurisdiction by virtue of a timely appeal from a final Board decision. *Mayer v. Brown*, 37 F.3d 618 (Fed.Cir.1994). The Court has determined that jurisdiction also attaches in those cases in which the appellant has: (1) filed a motion for BVA reconsideration within 120 days after the mailing date of the BVA decision; and then (2) filed an NOA within 120 days after the BVA Chairman has denied the reconsideration motion.

In *Rosler v. Derwinski*, 1 Vet.App. 241, 249 (1991), the Court held that filing a motion for reconsideration during this Court's 120-day judicial appeals period defeated the finality of the underlying BVA decision and the start of the 120-day judicial appeals period until the mailing to the claimant of notice of the Chairman's denial of that motion. In dictum, the Court further advised the following:

> In determining whether the initial reconsideration motion was filed within the 120-day judicial appeal period, the BVA, in essence, will need to treat the motion as if it were an NOA filed with this Court and apply our decisions in determining the length of the judicial appeal period and the application of 38 U.S.C. [§ 7266(a)] to the facts of the particular case.

*Id.* at 249. From the facts of *Rosler*, it is clear that this sentence was included for the sole purpose of instructing the Board as to when an appellant needed to be *advised* of a right of appeal to this Court after Board denial of the motion for reconsideration. *Id.*

■■■ Three years later in 1994, Congress amended 38 U.S.C. § 7266(a) to provide that an NOA "shall be deemed to be received by the Court ... [o]n the date of receipt by the Court, if the notice is delivered" or "[o]n the date of the United States Postal Service

postmark stamped on the cover in which the notice is posted, if the notice is properly addressed to the Court and is mailed ... [and if the] postmark ... is ... legible." Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 511, 108 Stat. 4645, 4670 (1994). The Court then amended its Rule 4(a) to implement the law change. Rule 4(a) of the Court's Rules of Practice and Procedure currently states that an NOA

shall be deemed to be received:

(1) on the date of its legible postmark, affixed by the United States Postal Service (not including a postage-metered date imprint other than one affixed by the United States Postal Service) on the cover in which the Notice is posted, if the mailing is properly addressed to the Court and is mailed; or

(2) on the date of its receipt by the Clerk, if it does not bear a legible postmark affixed by the United States Postal Service, or it is delivered or sent by means other than United States mail, including facsimile.

Despite the U.S. Postal Service postmark which indicates that the motion was mailed within the statutory period, the Board received the appellant's motion for reconsideration more than 120 days after the BVA's final decision. We find nothing which authorizes this Court to extend, *ipse dixit*, to VA the congressionally mandated postmark rule. *See Rosler, supra; see also* 38 U.S.C. §§ 7105(b)(1) (pertaining to filing Notices of Disagreement), 7266(a) (for filing Notices of Appeal). Nor are we persuaded that the normally-disfavored rule of legislation by implication is an appropriate rationale for extending the postmark rule, which by the express terms of the statute is confined to this Court. *See, e.g., Patterson v. McLean Credit Union,* 491 U.S. 164, 175, n. 1, 109 S.Ct. 2363, 2371 n. 1, 105 L.Ed.2d 132 (1989) ("It does not follow, however, that Congress' failure to overturn a statutory precedent is reason for this Court to adhere to it. It is 'impossible to assert with any degree of assurance that congressional failure to act represents' affirmative congressional approval of the Court's statutory interpretation.... Congress may legislate, moreover, only through the passage of a bill which is approved by both Houses and signed by the President. See U.S. Const., Art. I. § 7, cl. 2. Congressional inaction cannot amend a duly enacted statute." (citations omitted) (quoting *Johnson v. Transportation Agency, Santa Clara County,* 480 U.S. 616, 671–72, 107 S.Ct. 1442, 1472–73, 94 L.Ed.2d 615, (1987))); *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976) (" 'It is, of course, a cardinal principle of statutory construction that repeals by implication are not favored.' ") (citations omitted); *Helvering v. Hallock,* 309 U.S. 106, 121, 60 S.Ct. 444, 452–53, 84 L.Ed. 604 (1940) ("[W]e walk on quicksand when we try to find in the absence of corrective legislation a controlling legal principle"). As the Supreme Court has stated, "It is at best treacherous to find in Congressional silence alone the adoption of a controlling rule of law." *Girouard v. United States,* 328 U.S. 61, 69, 66 S.Ct. 826, 830, 90 L.Ed. 1084 (1946); *see also Immigration and Naturalization Service v. Chadha,* 462 U.S. 919, 944–51, 103 S.Ct. 2764, 2780–81, 77 L.Ed.2d 317 (1983) (discussing Article I of the Constitution and the importance of the bicameral and Presidential acquiescence requirements found therein).

Thus, this Court cannot impose the mailbox rule on VA, or require the Secretary to preserve or produce the postmarked envelope in which a motion for reconsideration was received, despite his having done so here. Such action, if deemed wise, is for the Congress to undertake. The *Rosler* directive, which was aimed at a wholly different issue, cannot form the predicate to do so. Accordingly, the Court holds that the postmark rule, as applied by congressional directive to NOAs filed in this Court, may not, short of a corresponding congressional directive, be extended to motions for reconsideration before the Chairman. In the present case, the request for reconsideration was filed more than 120 days after the BVA's final decision; therefore, the 120-day NOA period had expired and the Court is without jurisdiction to review Mr. Linville's appeal.

The Secretary's motion to dismiss this appeal for lack of jurisdiction is granted. The appeal is DISMISSED.

KRAMER, Judge, with whom STEINBERG, Judge, joins, dissenting:

In *Rosler v. Derwinski,* 1 Vet.App. 241, 249 (1991), the Court stated:

In determining whether the initial reconsideration motion was filed within the 120-day judicial appeal period, the BVA, in essence, will need to treat the motion as if it were [a Notice of Appeal (NOA)] filed with this Court and apply our decisions in determining the length of the judicial appeal period and the application of 38 U.S.C. § 4066(a) [now § 7266(a)] to the facts of the particular case.

In other words, according to *Rosler,* the filing date of a motion for reconsideration with the BVA is to be determined in the same manner as the filing date of an NOA, which is controlled by 38 U.S.C. § 7266(a). Section 7266(a) of title 38, U.S.Code, provides:

(3) [An NOA] shall be deemed to be received by the Court as follows:

. . .

(B) On the date of the United States Postal Service postmark stamped on the cover in which the notice is posted, if the notice is properly addressed to the Court and is mailed.

(4) For [an NOA] mailed to the Court to be deemed to be received under paragraph (3)(B) on a particular date, the United States Postal Service postmark on the cover in which the notice is posted must be legible. The Court shall determine the legibility of any such postmark and the Court's determination as to legibility shall be final and not subject to review by any other Court.

In this case, the appellant's motion for reconsideration was legibly postmarked on June 19, 1996, 112 days after the date on which the BVA mailed notice of its decision. Pursuant to 38 U.S.C. § 7266(a)(3)(B) and (a)(4) and *Rosler, supra,* the Court should hold that the appellant's motion for reconsideration is deemed received by the BVA on June 19, 1996, the date of the postmark, thus tolling the 120-day period for filing an NOA with the Court under section 7266(a).

The majority argues that the above quoted language from *Rosler* applies only to determining when a movant for BVA reconsideration whose motion has been denied must be advised of his or her appellate rights. However, if that *Rosler* language applies only to the BVA's duty to provide notice of appellate rights, and not to the rights themselves, it would seem that the rather peculiar result is that, in some cases, such as the one before us, the BVA would be required to apply the postmark rule to its notice duty and, as a result, *inform claimants of appellate rights that they do not possess.*

The majority further argues that the postmark rule can be adopted only legislatively, not judicially. In doing so, the majority fails to recognize that the *Rosler* doctrine itself is a judicial creation by this Court based on Supreme Court precedent in *ICC v. Brotherhood of Locomotive Engineers,* 482 U.S. 270, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987) and opinions thereafter in the federal courts. *See Rosler,* 1 Vet.App. at 244–246. Moreover, when *Rosler* was issued, it *incorporated,* for the purpose of determining whether the NOA filing period was tolled by a motion for BVA reconsideration, the 120-day *statutory* limitation applicable only to an NOA filed with the Court. *Rosler,* 1 Vet.App. at 249. Thus, it follows that the *statutory* postmark rule applicable to an NOA should also be incorporated into the *Rosler* doctrine. Instead of assuring that the tolling doctrine judicially created in *Rosler* consistently incorporates legislative enactments relevant to the 120-day NOA filing requirement, this decision results in our arbitrary and unpredictable selection of which statutory provisions are to be incorporated and which are not.

STEINBERG, Judge, dissenting:

I join in Judge Kramer's dissent but wish to add two points. First, the Court's position has no internal logic. The Court established in *Rosler v. Derwinski,* one of its earliest decisions, "that, if following an initial final BVA decision the claimant, as did Rosler—before filing an NOA with this Court—files a

motion for reconsideration with the BVA during the 120-day judicial appeal period, the finality of the initial BVA decision is abated by that motion for reconsideration" and the NOA-filing period is tolled by that filing. *Rosler*, 1 Vet.App. 241, 249 (1991). In order to apply this tolling doctrine, the Court must determine *when* the claimant "files" the motion for reconsideration with the Board. There is no viable basis for distinguishing between the Court's application of the *Rosler* tolling doctrine to the filing with the Court of a Notice of Appeal (NOA) and the application of that doctrine to the filing with the Board of Veterans' Appeals (BVA or Board) of a motion for BVA reconsideration, given that the *only* basis for looking at the date of filing with the Board is to determine whether an appellant has filed a timely NOA with this Court during the 120 days allowed by 38 U.S.C. § 7266(a) for this purpose. Because of this, the Court in *Rosler* specified that the date of the filing of that motion should be decided by treating it "as if it were an NOA filed with the Court" and that the Court's decisions should be applied "in determining the length of the judicial appeal period and the application of 38 U.S.C. § [7266(a)] to the facts of the particular case." *Ibid.*

I do not understand the Court to be suggesting that there is any other logical way to determine *when* a claimant "files" a motion for reconsideration. The Board would normally have no need to make such a determination because the date of that filing has no significance within the Department of Veterans Affairs (VA) adjudication system. Neither the statute, 38 U.S.C. § 7103, nor VA regulations, 38 C.F.R. §§ 20.1000, 20.1001(b) (1997), "contain any deadline for the filing of a motion for reconsideration with the BVA Chairman", *Rosler*, 1 Vet.App. at 244. Indeed, Congress recently amended the recon-

sideration provision and made no change with respect to timeliness. *See* Board of Veterans' Appeals Administrative Procedures Improvement Act of 1994, Pub.L. No. 103–271, § 6(a), 108 Stat. 741, 742 (1994) (amending section 7103). The regulations specify that the motion may be filed "at any time", 38 C.F.R. § 20.1001(b), and that reconsideration may be accorded "at any time", 38 C.F.R. § 20.1000. Moreover, there is no time limit on how long the BVA may take to decide the motion. *See* 38 C.F.R. § 20.1001(c) (1997) (regarding disposition of motions for reconsideration). Hence, because the notion of the "timeliness" of a motion for BVA reconsideration was then (and still is) a non-sequitur in VA administrative practice, the Court in *Rosler* had no guidepost to apply to determine when a motion for BVA reconsideration was "filed" with the BVA for purposes of determining whether it was filed with the Board within the 120 days allowed by section 7266(a) other than whether the motion would have been timely had it been an NOA filed with the Court.

It was against this background that Congress legislated the postmark rule in 1994 in the Veterans' Benefits Improvements Act of 1994, Pub.L. No. 103–446, § 511(a), 108 Stat. 4645, 4670 (1994), and revised the reconsideration provisions of section 7103 in 1994 in Public Law 103–271, *supra.* Federal caselaw is clear that Congress is assumed to be aware of judicial interpretations of the provisions of law it is amending.[1] Congress legislated the postmark rule for NOAs in order to give VA claimants located across the United States more equivalent opportunities to file their NOAs within 120 days after the BVA mailed notice of its decision. *See* S.Rep. No. 103–232, at 5 (1994) (Court's "actual receipt" rule "provides those who live closer to Wash-

1. *See Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184–85, 108 S.Ct. 1704, 1711–12, 100 L.Ed.2d 158 (1988) ("[w]e generally presume that Congress is knowledgeable about existing law pertinent to legislation it enacts"); *Traynor v. Turnage*, 485 U.S. 535, 545–46, 108 S.Ct. 1372, 1380–81, 99 L.Ed.2d 618 (1988) (Supreme Court assumes that Congress was aware of VA interpretation of "willful misconduct" when it enacted new law using that term "and that Congress intended that the term receive the same meaning for purposes of that [new] statute as it had re-

ceived for purposes of other veterans' benefits statutes"); *Lorillard v. Pons*, 434 U.S. 575, 581, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change. So too, where ... Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law") (citations omitted).

ington, D.C., ... more actual time to perfect their appeals" and "does not grant any lenience to an appellant who mailed a[n NOA] well before the 120th day but whose notice was delayed ... [or] acknowledge that such delays routinely occur due to no fault of the sender").[2] In doing so, Congress gave no indication that it did not want to extend the benefit of the new section 7266(a) postmark rule to a VA claimant who sought BVA reconsideration to try to obtain an administrative resolution of the claim before taking an appeal to this Court.[3] Indeed, I can find no plausible basis in determining the timeliness, within the NOA-filing period, of the filing of a motion for BVA reconsideration, for applying a rule that is different from the one used to determine the timeliness of the filing of the NOA itself. The Court's decision today provides an improvident encouragement for potential appellants approaching the expiration of the 120-day NOA filing period to file an appeal with this Court—in order to take advantage of the postmark rule and not be at the mercy of the U.S. mails—rather than a motion for reconsideration with the Board. Such an incentive contravenes the Court's longstanding preference for preserving judicial resources, where possible, through Board reconsideration.[4]

My second reason for writing separately is to express my concern about a highly unfortunate pattern that is emerging of late in this Court of deciding important questions of law without obtaining briefing on them from the parties and/or amici curiae. See *Laruan v. West*, 11 Vet.App. 80, 86 (1998) (en banc) (Kramer and Steinberg, JJ., concurring in part and dissenting in part); *Dittrich v. West*, —— Vet.App. ——, No. 96–1590, 1998 WL 45529, slip op. at 1–2, 5 (Jan. 22, 1998) (Steinberg and Kramer, JJ., dissenting to en banc order denying en banc consideration). In the instant case, the Court is similarly proceeding without obtaining the Secretary's views (with a reply from the appellant) on the question decided by the Court. It certainly cannot be assumed what the Secretary's position would be. In *West (Walter) v. Brown*, the Secretary argued *against* the Court's dismissal of an appeal on jurisdictional grounds, *West*, 7 Vet.App. 329, 333 (1995) (en banc) (Steinberg and Kramer, JJ., dissenting), and then joined the appellants in several other cases on appeal to the U.S. Court of Appeals for the Federal Circuit in successfully urging the overruling of *West* in *Barrera v. Gober*, 122 F.3d 1030, 1032 (Fed. Cir.1997), and *Grantham v. Brown*, 114 F.3d 1156, 1159 (Fed.Cir.1997). Moreover, in the instant case, the Secretary took the unusual

**2.** *See also Shropshire v. Derwinski*, 2 Vet.App. 236, 236 (1992) (per curiam order) (Steinberg, J., concurring); *DiDonato v. Derwinski*, 2 Vet.App. 42, 44 (1991) (per curiam order) (Steinberg, J., concurring); *cf.* 38 U.S.C. § 7105(b)(1) ("notice of disagreement [ (NOD) ] postmarked before the expiration of the one-year period [for filing NOD as to VA agency of original jurisdiction decision] will be accepted as timely filed").

**3.** The majority relies upon a string of cases for the proposition that Congressional silence ought not to bear upon our interpretation of a statute. *Ante* at 62–63. I believe a more accurate reading of those cases, to the extent that they are relevant, is that Congressional silence does not validate a judicial precedent in such a way as to bar the Court's reexamination. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 175 n. 1, 109 S.Ct. 2363, 2371 n. 1, 105 L.Ed.2d 132 (1989) ("It does not follow, however, that Congress' failure to overturn a statutory precedent is reason for this Court to adhere to it."); *Girouard v. United States*, 328 U.S. 61, 69–70, 66 S.Ct. 826, 829–30, 90 L.Ed. 1084 (1946) ("We do not think that under the circumstances of this legislative history [failed Congressional efforts to

amend law interpreted by Court] that we can properly place on the shoulders of Congress the burden of the Court's own error."); *Helvering v. Hallock*, 309 U.S. 106, 119, 60 S.Ct. 444, 451, 84 L.Ed. 604 (1940) ("It would require very persuasive circumstances enveloping Congressional silence to debar this Court from re-examining its own doctrines."). However, in the instant case, I am not proposing that Congressional silence validates *Rosler*—indeed, the majority does not question the authority of *Rosler*—but that *Rosler*, absent contrary instruction from Congress or revision by this Court, continues to control, and *Rosler* calls for the determination of the timeliness of the filing of a motion for BVA reconsideration with the Board under the same law that we apply to our determination of the timeliness of an NOA filed with this Court. That law now includes the postmark rule in 38 U.S.C. § 7266(a).

**4.** *See Cerullo v. Derwinski*, 1 Vet.App. 195, 200 (1991) (interpreting section 7103 to allow sua sponte reconsideration by Board because "[a]dministrative reconsideration may serve as a way to resolve a claim expeditiously ... without the necessity for judicial review").

step of attaching to his February 28, 1997, motion for dismissal a copy of the envelope, with a legible timely postmark, in which the motion for reconsideration was mailed to the Board but, curiously, did not address the significance of that envelope in terms of tolling the section 7266(a) filing deadline under *Rosler*.

The process followed in this case and in *Laruan* and *Dittrich* does a disservice to the numerous VA claimants whose rights are affected by our decisions and the Court's bar of dedicated and expert practitioners, representing both appellants and the Secretary, who have demonstrated their proficiency and professionalism in filing informative and helpful briefs, many as volunteer amici curiae, to assist the Court in making enlightened decisions on substantial legal questions.

For the above reasons and those in Judge Kramer's dissent, in which I join, I respectfully dissent.