KASOLD, Judge,
dissenting:
Without question, equitable tolling of our jurisdictional statute is not permitted when a would-be appellant files a Notice of Appeal (NOA) late. See Bowles v. Russell, 551 U.S. 205, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007); Henderson v. Peake, 22 Vet.App. 217 (2008), aff'd sub nom. Henderson v. Shinseki, 589 F.3d 1201(Fed.Cir.2009). There are valid reasons for Congress to *372 limit our authority to hear appeals when appellants fail to timely file an NOA. Finality is not an unimportant consideration. Bingham v. Nicholson, 421 F.3d 1346, 1349 (Fed.Cir.2005) (“ ‘The purpose of the rule of finality is to preclude repetitive and belated readjudication of veterans’ benefit claims.’ ” (quoting Cook v. Principi, 318 F.3d 1334, 1339 (Fed.Cir.2002) (en banc))).
Recently, the Court also held that equitable tolling was not permissible for a misfiling, even when filed within the 120-day filing period. Irwin v. Shinseki, 23 Vet.App. 128, 131 (2009). Recognizing that equitable tolling is no longer available for a misfiled NOA, Mr. Rickett presents two arguments in support of jurisdiction over a timely, yet misfiled NOA, i.e.: (1) the notice of appellate rights is inadequate; and (2) the Court should exercise its authority to deem the NOA filed with the Court on the date it was misfiled with the Secretary.
1. Notice of Appellate Rights. I agree with the majority that the appellant fails to demonstrate that the notice of appellate rights provided in this case was so confusing to the appellant that it failed to serve its purpose. Certainly, the appellant established that the notice of appellate rights is confusing, but in his own words he admitted that he erred in mailing his NOA to the correct address, in part, due to his “haste,” and, ultimately, he was able on review to discern the requirement to file his NOA with the Court (albeit, only after calling the Court and being so informed). Bethea v. Derwinski, 2 Vet.App. 252, 255 (1992) (holding that appellant bears burden of establishing jurisdiction by a preponderance of the evidence); see also Irwin, supra at 134 (stating that the notice of appellate rights was adequate with regard to how and when to file an NOA).
I note, however, that it may yet be demonstrated that the panoply of information provided in the current notice of appellate rights provided by the Secretary is simply too much information to fulfill either the Secretary’s statutory requirement to provide notice how to appeal a Board decision to the Court, 38 U.S.C. § 5104(a); Thompson v. Brown, 8 Vet.App. 169, 177 (1995), or traditional due process and fair process requirements regarding notice and an opportunity to be heard. Cf. Cushman v. Shinseki, 576 F.3d 1290, 1298 (Fed.Cir.2009) (holding that entitlement to benefits is a property interest protected by the Due Process Clause of the Fifth Amendment to the United States Constitution), Thurber v. Brown, 5 Vet.App. 119, 123 (1993) (recognizing that the Secretary must provide reasonable notice and opportunity to respond as a matter of fair process).[1] See also Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (“An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present them objections.”). To this end, judicial notice should be taken that just since Ir *373 win was issued in August 2009, at least 13 appeals have been dismissed because veterans timely filed their NOA, but did so with the Secretary.
It may be that notice how to appeal a Board decision to the Court will have to be provided in larger print than the current small print used by the Secretary and provided on a stand-alone document, with the other review rights and information provided to a potential appellant on a separate document. Although it is the Secretary who has the duty to provide notice how to appeal to this Court, our duty to review Board decisions cannot be frustrated by the provision of such notice in such a manner that it leads to confusion.[2] Cf. Matter of Cox, 10 Vet.App. 361, 371 (1997) (noting that the Secretary cannot frustrate the Court’s statutory appellate jurisdiction and that mandamus is appropriate for “cases in which, absent resort to mandamus, we would lose our ability to review” (quoting United States v. Christian, 660 F.2d 892, 894 (3d Cir.1981))), vacated on other grounds sub nom. Cox v. West, 149 F.3d 1360 (Fed.Cir.1998); see also Cushman and Thurber, both supra.
2. Deemed Filed. As clear as language might appear when one reads it, it nevertheless may require interpretation on a subsequent or more thorough reading. See, e.g. Glaser v. Wound Care Consultants, Inc., 570 F.3d 907, 910 (7th Cir.2009) (revisiting and more broadly interpreting a prior interpretation of the phrases “based upon,” and “public disclosure” in 31 U.S.C. § 3730(e)(4)(A) to determine whether the court had jurisdiction to adjudicate a qui tarn action to recover improper Medicaid billing). Thus, while the statutory jurisdictional provision that judicial review of a “final” Board decision is initiated when an appellant files “a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed” appears at one glance to be straightforward and without room for interpretation, see Irwin, (“Congress has not authorized this Court to excuse compliance with the statutory time limit of 120-days and the requirement that the notice be filed with the Court.”), on closer review this simply is not accurate.[3]
The term “Notice of Appeal” requires interpretation; indeed, the interpretation provided in the Rules of the Court, U.S. Vet.App. R. 3(c), was later rejected as too *374 restrictive by the Federal Circuit, Durr v. Nicholson, 400 F.3d 1375, 1382-83 (Fed.Cir.2005). Similarly, although our jurisdictional statute states that the mailing of the Board decision starts the 120-day period in which to file an NOA, the Court has held that the 120-day period begins when the Board decision is mailed with the notice of appellate rights. See Thompson, supra at 177. Likewise, contrary to the view that our jurisdictional statute “permits no exceptions” to the requirement to file an NOA with the Court within the 120-filing period, Irwin, supra, a potential appellant gets 121 days to file an NOA if the 120th day is on a Sunday, and 121 days to file an NOA if the 120th day is on a Saturday, and 122 days if the 120th day falls on a Saturday and Monday is a holiday, and potentially more days if the Court is closed for some other reason. U.S. Vet. App. R. 26(a). This is so despite the fact that no extensions are provided in the statute and any such extension is not necessary because an NOA may be filed by fax or attached to an e-mail on the 120th day, even when the Court otherwise is closed. U.S. Vet.App. R. 25.
And, despite the fact that a Board decision is final when it and notice of appellate rights are provided to a potential appellant, which should start the 120-day period in which to file an NOA with the Court, if the potential appellant files a motion for reconsideration with the Chairman of the Board within the 120-day period, the 120-day period in which to file an NOA with the Court begins anew after the Board Chairman renders a decision on the request for reconsideration. See Rosler v. Derwinski, 1 Vet.App. 241, 249 (1991). This is so, regardless of the fact that a decision of the Board Chairman is not a Board decision, and despite the fact that nothing in the statute suggests that a request for reconsideration not yet acted upon by the Board Chairman somehow renders a Board decision not final.
Further, if you are a confined in an institution,[4] our Rules deem your NOA filed on the date you place it in the institution’s internal mail system, U.S. Vet.App. R. 25(b)(4), and for those early days when the Court’s address was not readily available, the Court found the judicial interpretative authority to find a filing with the Secretary to be deemed a filing with the Court, Torres v. Derwinski, 1 Vet.App. 15, 17 (1990) (citing Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988)). The decision in Torres also noted that in the future an NOA would have to be received by the Court to be timely filed, and our Rules reflect this requirement. U.S. Vet.App. R. 4(a). This is so, even though our jurisdictional statute did not at the time (and still does not) specifically require “receipt” to constitute a “filing.”[5]
*375 I cite these “exceptions to” or “interpretations of’ our jurisdictional statute not to criticize them. Rather, they confirm, in my opinion, that our jurisdictional statute is not without need of interpretation to ensure its application fulfills the intent of Congress to provide our veterans judicial review of their claims provided they “file a notice of appeal [of a final Board decision] with the Court within 120 days after the date on which notice of the [Board] decision is mailed.” 38 U.S.C. § 7266(a). Indeed, if “receipt” within 120 days of the mailing of the Board decision truly was a jurisdictional requirement, as opposed to “filing”, none of the exceptions noted above could stand.
I also note that in response to interpretations that an NOA must be “received” by the Court within 120 days after the date the Board decision is mailed, Congress amended our jurisdictional statute such that the date of a United States Postal Service postmark on the envelope in which an NOA is mailed, is the date the NOA is “deemed received” by the Court. 38 U.S.C. § 7266(c). Moreover, judicial interpretation creates a rebuttable presumption that it is “deemed received” on the date of normal delivery by the United States Postal Service, Rios v. Nicholson, 490 F.3d 928, 932-33 (Fed.Cir.2007) (“[T]he common law mailbox rule creates a presumption of fact that the mail was actually received by its addressee”)
Just as it is a fact of life that the Court is closed at certain times, underlying the basis for interpreting our jurisdictional statute to permit a filing beyond the 120th day of the mailing of a Board decision, it is a fact of life that NO As will be filed late, or timely filed, but misfiled. A late filing cannot serve to invoke our jurisdiction. See Henderson, and Bowles, both supra. However, because, as the Supreme Court stated, the relevant question under a jurisdictional statute is “one of timing, not destination,” Houston, 487 U.S. at 273, 108 S.Ct. 2379, a “misfiling” within the 120-day period is viewed differently. Thus, an NOA placed by an inmate with the institution’s mail system is “deemed filed” at that time, U.S. Vet.App. R. 25(b)(4), and a veteran’s filing with the Secretary was “deemed filed” at a time when the Court’s address was not immediately available, Torres, supra.
Although Houston and Torres involved circumstances that made it difficult to actually file an NOA with the Court, timing, not specific location, was the key concern. This concept certainly underlies Rule 4(d) of the Federal Rules of Appellate Procedure, which deems the date an NOA is misfiled in a court of appeals to be the date it is filed in the appropriate district court. Fed. Rule App. Proc. 4(d).
Congress gave the Court the authority to prescribe rules of practice and procedure, and directed that the Federal Rules of Appellate Procedure serve as interim rules under the Court until it prescribed its own rules. Pub.L. 101-94, Title II, § 203, Aug. 16, 1989, 103 Stat. 627. Thus, Congress manifested understanding that the Court would prescribe rules similar to the Federal Rules, adjusted for the unique setting of the Court. Most appeals to the Court involve disabled veterans; the Secretary logs in, by date, mail that he receives, and there is no prejudice in requiring him to forward misfiled NOAs to the Court. Applying the basis underlying FRAP 4(d), and our duty to interpret the law, I believe it proper and appropriate *376 that we focus on timing, not location, and that we consider the date an NOA is misfiled with the Secretary to be the date the NOA is filed with the Court.[6]
For these reasons, I respectfully dissent.

. Irwin relied on Cummings v. West, 136 F.3d 1468, 1472-73 (Fed.Cir.1998), for the proposition that the notice of appellate rights provided to the appellant in Irwin was adequate with regard to the "how” and "when” to file an NOA. Presumably because it was not argued, however, Irwin did not address whether the manner in which the notice of appellate rights was presented was so confusing that it rendered the notice of appellate rights inadequate. In contrast to the notice of appellate rights reviewed in Cummings, which provided additional information about certain review rights and requirements not related to an appeal to this Court on less than one page, the appellate notice rights in Irwin was provided with a myriad of additional information spread over two pages. The appellate notice that Mr. Rickett received is similar to the notice addressed in Irwin.

. I ascribe no ill intent with regard to the inclusion of appellate notice rights with the panoply of information related to other review options and requirements that the Secretary must, or otherwise deems appropriate to, provide to veterans.

. The majority’s suggestion that Irwin must somehow be “circumvented” to conclude that a misfiling below might nevertheless be a timely deemed filing at the Court under our jurisdictional statute, 38 U.S.C. § 7264, reflects a failure to consider the time-honored principle that case holdings are limited to the issues raised and decided. Chief Justice Marshall stated:
It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the Court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.
See Cohens v. Virginia, 6 Wheat. 264, 19 U.S. 264, 399, 5 L.Ed. 257 (1821). Irwin closed the door on equitable tolling with regard to misfilings, but it nowhere addressed whether a timely, yet misfiled NOA could be deemed filed at the Court. Thus, the issue is one of interpretation, not circumvention.

. Interestingly, “institution” is not defined, raising another interpretation issue as to whether it includes medical confinement in addition to penal confinement, or confinement by a foreign "institution”.

. The majority’s view that for "a document to be filed with the Court, it must first be received by the Court,” ante at 368, parrots our rule, U.S. Vet.App. R. 4(a), but no such requirement exists in the statute, see 38 U.S.C. § 7266. Similarly, the majority's view that there is "no practical distinction between a document filed and a document 'deemed filed' ”, ante at 368, ignores reality. If a document is "deemed filed” when received by the Secretary within 120 days of a Board decision, it could make an NOA timely filed and thereby vest the Court with jurisdiction, similar to the consequences of a deemed filing under Fed. Rule App. Proc. 4(d). Finally, the congressional amendments creating a statutory postmark rule and defining when a document was "deemed received” serve to expand the limitation in our Court Rules that an NOA actually had to be received within 120 days of a Board decision to vest the Court with jurisdiction. See 38 U.S.C. § 7264(b). Nothing in legislation or legislative history indicates Con *375 gress changed the basic requirement that an NOA be "filed” with the Court or otherwise limited or intended to limit our judicial authority to interpret when a misfiled document might be "deemed filed”.

. To the extent the majority’s discussion of the individual exceptions to the 120-day "jurisdictional” filing requirement "with the Court” indicates that my listing of the exceptions was intended to show one of them applied here, I clarify that my listing is intended only to show that it ignores reality to hold that there are no exceptions, or that our jurisdictional statute is not subject to judicial interpretation to effect the intent of Congress. As a final matter, and contrary to my colleagues' observation that exceptions have only been allowed when filing with the Court has been "impossible,” I note that: (1) "impossibility” is not an exception to the statute; (2) notices of appeal have been permitted to be filed by fax, on days the Court is closed, since shortly after the Court was established, such that filing on a weekend is not an "impossibility,” (3) nothing prevented the appellant in Rosler v. Derwinski, 1 Vet.App. 241, 249 (1991) from filing an NOA with the Court within 120 days of the mailing of the Board decision, and (4) the appellant in Torres v. Derwinski, 1 Vet.App. 15, 16 (1990), was not a prisoner, and descriptions of impossibility notwithstanding, due diligence could have revealed the Court’s address, which was available no later than 14 November 1989, within the 120-day filing period.